Horace W. **BONNER**, Jr., et al., Appellants,

v.

**CIRCUIT COURT OF the CITY OF ST. LOUIS, MISSOURI,** et al., Appellees.

No. 75–1056.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1975.

Decided Nov. 28, 1975.

Certiorari Denied March 1, 1976.

See 96 S.Ct. 1418.

Samuel H. Liberman, St. Louis, Mo., made argument for appellants.

Amicus curiae brief for State of Missouri was filed by John C. Danforth, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, Mo., and Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, Mo.

Separate brief for appellee and Missouri Bar, amicus curiae, was filed by R. H. McRoberts, St. Louis, Mo., for Missouri Bar.

James J. Gallagher, Associate City Counselor, St. Louis Mo., for appellees Judges Tillman, Bloom, Walsh, Scott and Corcoran.

John F. Gillespie and Michael G. Ravetta, Asst. Circuit Attys., St. Louis, Mo., for appellee Brendan Ryan.

Cornelius T. Lane, Sp. Asst. Public Defender, St. Louis, Mo., for appellee Charles D. Kitchen.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER and HENLEY, Circuit Judges, en banc.

LAY, Circuit Judge.

Twenty black prisoners, each convicted for various crimes in the Circuit Court for the City of St. Louis, Missouri, appeal from the dismissal of their complaint alleging civil rights violations on behalf of themselves and others similarly situated. The defendants include five St. Louis Circuit Court Judges, the Circuit Attorney and the Public Defender for the City of St. Louis. Jurisdiction is allegedly based upon 42 U.S.C. § 2000a on the ground that the state court is a place of public accommodation. Plaintiffs' basic allegation is that the defendants have joined in a systematic racially discriminatory conspiracy to harass, intimidate, coerce, discriminate, and deny equal protection to black citizens by coercing pleas of guilty to criminal charges.[1]

Plaintiffs seek both declaratory and injunctive relief. They ask the court to declare the policies and practices of the defendants unconstitutional and to enjoin the denial to "black persons, namely plaintiffs" of due process and equal protection of the law. Specifically plaintiffs seek to enjoin Judges Tillman, Bloom, Scott, Walsh and Corcoran from acting in violation of the Federal Constitution, and defendant Kitchen, as Public Defender, from accepting federal funds so long as his office provides representa-

---

1. Plaintiffs' complaint alleges:

The plaintiffs [sic] criminal causes pending before the defendants Bloom, Scott, Walsh, are transferred to the defendant Judge Tillman, who is the only black Circuit Court Judge at the city of St. Louis, there the plaintiffs were personally threatened by the defendant Judge Tillman, who has threatened plaintiffs that if they proceeded to a jury trial before him or any of the other defendants, that plaintiffs was [sic] as good as convicted anyway, that defendant Judge Tillman has approached some of the plaintiffs herein personally in the back room (docket) of the courthouse, and stated to them that if they did not plead guilty, he'd see that they were convicted anyway where-ever [sic] the plaintiffs went in the courthouse, plaintiffs have been told by defendant Judge Tillman that a jury trial were [sic] a waste of his time. That the black persons are sent before defendant Judge Tillman because he is black, whereas black persons cannot complaint [sic] of the racial discrimination in the Circuit Court. They allege in addition that they have been subjected at times to racial slurs by various officials, particularly the City Attorney. It is further alleged that as part of this conspiracy the Public Defender has too many cases to provide them adequate legal representation.

tion below "adequate standards" due to too heavy a caseload.

The district court, the Honorable H. Kenneth Wangelin presiding, dismissed the complaint without a hearing, holding that the state court is not a place of public accommodation under 42 U.S.C. § 2000a and that judicial immunity barred relief as to all defendants.[2]

■■■ We find it unnecessary to decide whether jurisdiction can be based on 42 U.S.C. §§ 2000a and 2000b since we view the pro se complaint as asserting jurisdiction based on the Civil Rights Act, 42 U.S.C. § 1983 *et seq.* We have observed before:

[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.

*Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir. 1974).

The district court dismissed the complaint on the ground that each of the defendants enjoyed judicial or quasi-judicial immunity which barred declaratory and injunctive relief. This circuit has never decided whether those enjoying judicial immunity from damage suits are similarly immune from suits seeking equitable and injunctive relief. In *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) the Supreme Court observed:

Judges who would willfully discriminate on the ground of race or otherwise would willfully deprive the citizen of his constitutional rights, as this

complaint alleges, must take account of 18 U.S.C. § 242. . . . That section provides:

"Whoever, under color of any law, statute, ordinance, regulation, or custom willfully subjects any inhabitant of any State . . . to the deprivation of any rights, privileges, or immunities, secured or protected by the Constitution or laws of the United States, or to different punishments, pains or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined . . . or imprisoned . . . ."

Whatever may be the case with respect to civil liability generally, see *Pierson v. Ray* [386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)], or civil liability for willful corruption, see *Alzua v. Johnson,* 231 U.S. 106, 110–111 [34 S.Ct. 27, 28–29, 58 L.Ed. 142] (1913); *Bradley v. Fisher* [80 U.S.] 13 Wall. 335, 347, 350, 354 [20 L.Ed. 646] (1872), we have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights. Cf. *Ex parte Virginia* [10 Otto 339], 100 U.S. 339, 25 L.Ed. 676 (1880). On the contrary, the judicially fashioned doctrine of official immunity does not reach "so far as to immunize criminal conduct proscribed by an Act of Congress . . . ." *Gravel v. United States,* 408 U.S. 606, 627, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).

414 U.S. at 503, 94 S.Ct. at 679.

---

**2.** The district court denied plaintiffs the right to appeal in forma pauperis on the ground that the appeal was frivolous. The Court of Appeals in an unreported order granted a certificate of good faith under 28 U.S.C. § 1915 and allowed the appeal to be docketed. Thereafter Mr. Samuel H. Liberman was appointed counsel to represent plaintiffs. This court expresses its sincere gratitude to Mr. Liberman for his excellent representation of the plaintiffs.

Joining the defendants, as amicus curiae, was the Attorney General of the State of Missouri on behalf of the Judicial Conference of the State of Missouri, consisting of the judges and commissioners of the supreme court, the courts of appeals, the circuit judges and the judges of the St. Louis Court of Criminal Correction and judges of the courts of common pleas. The Missouri State Bar Association also joined in the appellees' brief as amicus curiae.

We need not reach that question here. We affirm the dismissal on the grounds that first, plaintiffs have failed to allege irreparable harm and lack of an adequate remedy at law, indispensable prerequisites to the equitable relief requested, and second, that the doctrine of federal non-intervention into state court proceedings is applicable here.

The Supreme Court has often reaffirmed the basic principle that equity will not act to restrain state criminal proceedings "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Neither the requisite irreparable harm nor the lack of an adequate remedy at law exists here. Plaintiffs do not challenge their present incarceration or the legality of their sentences, they challenge only possible future recurrences of the alleged illegal acts. The reason for this is clear. If plaintiffs sought relief from the fact or duration of present custody on the basis of an illegal conviction, they would have to begin by filing under the state post-conviction act, thereby exhausting their state remedies. *Preiser v. Rodriguez*, 411 U.S. 475, 488–89, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[3]

Plaintiffs seek a declaration that the past denial of their rights is unconstitutional and an injunction precluding the circuit court judges, the prosecutor and the public defender from conspiring to deny and actually denying them due process and equal protection of the law. The irreparable injury is alleged to be certain specific acts which might take place in some future state criminal prosecution. However, this speculative allegation fails to satisfy the requirement of irreparable injury which must be both great and immediate if injunctive relief were not forthcoming. *See O'Shea v. Littleton, supra* 414 U.S. at 495–96, 94 S.Ct. 669.

Furthermore, Missouri law, and federal law as well provide adequate legal remedies of which plaintiffs may avail themselves. Whether the relief is directed to the past or to the future, criminal defendants in the City of St. Louis may (1) seek disqualification of the judge if it can be demonstrated that the judge has a personal interest or prejudice which would deny the defendant a fair and impartial trial, Mo.S.Ct.R. 30.-12–30.16; *cf. Tyler v. Swenson*, 427 F.2d 412, 415–17 (8th Cir. 1970); (2) seek review of a conviction on direct appeal to the appropriate appellate court in Missouri, Mo.Ann.Stat. §§ 479.250, 547.070 (1953); (3) pursue post-conviction proceedings in the Missouri state courts under Mo.S.Ct.R. 27.26; and (4) upon exhaustion of state remedies seek federal habeas corpus relief under 28 U.S.C. § 2254.[4]

In mentioning these procedures, we in no way do violence to the doctrine that exhaustion of state remedies is not a prerequisite to relief under § 1983 of the Civil Rights Act. *See Preiser v. Rodriguez*, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This doctrine, however, was never intended to modify the rule that

**3.** The appendix to the appellees' brief, in which the Missouri Bar Association joined as amicus, indicates that several of the plaintiffs have post-conviction proceedings pending in the Missouri Court of Appeals. Counsel for plaintiffs was uncertain whether the precise ground alleged here, *i. e.*, a racially discriminatory conspiracy to coerce guilty pleas, is asserted in their post-conviction petitions.

**4.** Plaintiffs allege that proof of racial discrimination in a particular case cannot be established, but that proof lies in showing a pattern through several cases. However, that opportunity is not deprived habeas corpus petitioners. Habeas case class actions are allowed in this circuit. *See Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973). If a defendant alleges inadequate representation by a public defender or any other lawyer for that matter, relief will depend not on the burdensome trial docket the lawyer has assumed, but on factual allegation and proof of inadequate representation in the petitioner's particular case.

where a plaintiff seeks equitable relief he must demonstrate that he lacks an adequate remedy at law and that absent injunctive relief he will suffer irreparable harm. *See Allee v. Medrano*, 416 U.S. 802, 814, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Potwara v. Dillon*, 386 F.2d 74, 77 (2nd Cir. 1967).

 There exists a more fundamental reason why federal equitable relief is not available under the allegations of the complaint. Under our system of dual sovereignties state court judges are of course bound by the Federal Constitution. While some federal judicial review is required to assure uniformity in the application of the Bill of Rights,[5] Congress and the federal judiciary have consistently recognized that federal courts should permit state courts to try state cases, and that where constitutional issues arise, state court judges are fully competent to handle them subject to Supreme Court review. See *Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Schlesinger v. Councilman*, 419 U.S. 1043, 95 S.Ct. 615, 42 L.Ed.2d 637 (1975).

 The principle of comity is "an even more vital consideration" reinforcing the doctrine of restraining federal intervention on the principle of an inadequate equitable basis for relief. *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger*, "comity" was defined as:

[A] proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. . . . What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

401 U.S. at 44, 91 S.Ct. at 750.

Thus, a federal court should not intervene where such interference unduly inhibits the legitimate functioning of the individual state's judicial system. The cases are replete with admonitions against such interference and affirmances of this principle.

 The ultimate relief sought here either by declaratory judgment or injunction would require "nothing less than an ongoing federal audit of state criminal proceedings". *O'Shea v. Littleton, supra* 414 U.S. at 500, 94 S.Ct. at 678. A federal court's declaration of racial discrimination in the state criminal system, rather than on a case by case basis, would require a federal evidentiary hearing for all black defendants detained pending trial in the City of St. Louis. *Cf. Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

---

5. In *Cohens v. Virginia*, 6 Wheat 264, 19 U.S. 264, 5 L.Ed. 257 (1821), Chief Justice Marshall observed:

The propriety of intrusting the construction of the constitution, and laws made in pursuance thereof, to the judiciary of the Union, has not, we believe, as yet, been drawn into question. . . . "Thirteen independent courts," says a very celebrated statesman (and we have now more than twenty such courts) "of final jurisdiction over the same causes, arising upon the same laws, is a hydra in government, from which nothing but contradiction and confusion can proceed."

Dismissing the unpleasant suggestion, that any motives which may not be fairly avowed or which ought not to exist, can ever influence a state or its courts, *the necessity of uniformity, as well as correctness in expounding the constitution* and laws of the United States, would itself suggest the propriety of vesting in some single tribunal, the power of deciding, in the last resort, all cases in which they are involved.

19 U.S. at 415–16 (emphasis added).

Such relief is patently incompatible with the concept of comity. As in *O'Shea*, the relief sought here:

> [W]ould disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio*, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in *Younger*. Moreover, it would require for its enforcement the continuous supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings involving any of the members of the respondent's broadly defined class.

414 U.S. at 501, 94 S.Ct. at 679.

The fact that plaintiffs have sought declaratory relief as well as injunctive relief makes little difference here. In *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court held that the same principles which govern the propriety of granting federal injunctive relief in state criminal prosecutions, likewise govern the issuance of federal declaratory judgments in connection with such prosecutions. Although declaratory judgments are a statutory rather than a traditional equitable remedy, the Supreme Court has characterized the declaratory judgment as "essentially an equitable cause of action." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). In *Samuels v. Mackell*, the Supreme Court noted:

> [I]n cases where the criminal proceeding was begun prior to the federal civil suit, the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declara-

tory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. This is true for at least two reasons. In the first place, the Declaratory Judgment Act provides that after a declaratory judgment is issued the district court may enforce it by granting "[f]urther necessary or proper relief," 28 U.S.C. § 2202, and therefore a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings to "protect or effectuate" the declaratory judgment, 28 U.S.C. § 2283, and thus result in a clearly improper interference with the state proceedings. Secondly, even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would. As we said in the *Wycoff* case, 344 U.S., at 247, 73 S.Ct., at 242:

> "Is the declaration contemplated here to be *res judicata,* so that the [state court] cannot hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State [court] before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights."

401 U.S. at 72, 91 S.Ct. at 768.[6]

In conclusion, this court cannot and will not indulge in the assumption that the circuit court of St. Louis and the appellate courts of Missouri are incapable of fairly adjudicating the federal issues placed before them. Intervention by this court at this point would violate established and sound principles of comity. As the Supreme Court observed in *O'Shea* :

---

6. The prayer for declaratory relief based upon some possible future controversy runs into the additional obstacle of making the necessary showing of a present case or controversy. *See O'Shea v. Littleton, supra,* 414 U.S. at 490–99, 94 S.Ct. 669.

The objection is to unwarranted anticipatory interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in the federal courts; the object is to sustain "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."

414 U.S. at 500, 94 S.Ct. at 678, quoting *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951).

The judgment of dismissal is affirmed.

HEANEY, Circuit Judge (concurring).

I concur in the majority opinion only because I recognize that our Court is bound by the five-judge majority opinion in *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Were I able to write on a clean slate, I would adopt the views expressed in the dissenting opinion in *O'Shea*.