**Gary WHITE, Appellant,**

v.

**Lackland BLOOM; Daniel Murphy; Robert J. Walsh, Appellees.**

Nos. 79–1858, 79–1893.

United States Court of Appeals, Eighth Circuit.

Submitted April 24, 1980.

Decided April 30, 1980.

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

Gary White, appellant pro se.

Jack L. Koehr, City Counselor and John J. FitzGibbon, Associate City Counsel, St. Louis, Mo., for appellee, Bloom.

Ralph C. Kleinschmidt and Edward S. Meyer, Evans & Dixon, St. Louis, Mo., for appellee, Walsh.

Before ROSS, STEPHENSON and ARNOLD, Circuit Judges.

STEPHENSON, Circuit Judge.

Gary White, a black inmate of a state penitentiary, appeals from the dismissal of his *pro se* complaint brought under 42 U.S.C. § 1983. White, who was convicted by a jury of first degree robbery in 1975, filed a complaint in June 1979 against the judge, the prosecutor, and White's court-appointed attorney. The complaint alleged, *inter alia*, that the three defendants had conspired to impanel an all-white jury over White's objections and in his enforced absence. The district court[1] dismissed the complaint for failure to state a claim upon which relief could be granted. We affirm as to the claims against the judge and prosecutor, but remand as to the claim against the court-appointed attorney.

The allegations made in White's pleadings are as follows. On February 26, 1975, the Circuit Court of the City of St. Louis impaneled the jury for White's criminal trial. White was removed from the courtroom prior to the final portion of the voir dire examination of the jury panel and was not returned until a petit jury had been selected. Although two-thirds of the people of St. Louis are black, the petit jury selected for White's trial was all white. Upon his return, White orally objected to the fact that there was no black person on the jury. White also informed Judge Bloom that he had instructed his court-appointed counsel, Robert J. Walsh, not to participate in any court proceedings in White's absence. White moved to have the court dismiss his counsel and change the trial's venue. Judge Bloom denied these requests. The prosecuting attorney, Daniel Murphy, participated in the jury impanelment. He stated to Judge Bloom that he recalled that White was present during all parts of the jury voir dire, even though defendants Bloom, Walsh, and Murphy all knew that White had been absent. Murphy "also made other perjuring statements in order to obtain a conviction * * *." Defense counsel Walsh, in addition to his participation in the events thus far described, informed Judge Bloom that "my client is only objecting to the juror box before the jury was impaneled and not the jury as it presently is," even though White was actually objecting to the jury as impaneled. Walsh also conspired with co-defendants Bloom and Murphy "to conceal the facts of [White's] false arrest." On appeal, Walsh continued to "misrepresent" White by not raising the objection to the all-white jury and by signing, with defendants Bloom and Murphy, a trial transcript which they had altered and knew to be false. Although Walsh received word of the affirmance of White's conviction on April 25, 1977 (*State v. White*, 549 S.W.2d 914 (Mo.App.1977)), he did not inform White, who did not learn of the appeal's outcome until March 1979. Moreover, Walsh did not seek any further appeal.

A court faced with a motion to dismiss a *pro se* complaint alleging violations of civil rights must read the complaint's allegations expansively, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), and take them as true for purposes of deciding whether they state a claim. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

Moreover, "the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Bonner v. Circuit Court of St. Louis,* 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir. 1974)).

White's complaint, assuming his allegation of conspiracy is sufficiently specific, relates facts that possibly could entitle him to relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.[2] Section 1983 affords equitable and monetary relief against any person who deprives the plaintiff of constitutional rights while acting under the color of state law, and section 1985 affords monetary relief against persons who conspire, with a racial or otherwise class-based animus, to deprive the plaintiff of the equal protection of the laws. *See generally Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■■■ White's basic claim is that the defendants conspired to seat an all-white jury and then conspired to block White's attempts to redress that situation. "Although a Negro defendant is not entitled to a jury containing members of his race, a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Swain v. Alabama,* 380 U.S. 202, 203–04, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965). Where the complaint is that the prosecutor has made discriminatory use of peremptory challenges to exclude blacks from the jury, the plaintiff must allege facts to show systematic discrimination over a period of time. *E. g., Hampton v. Wyrick,* 606 F.2d 834, 835 (8th Cir. 1979). This systematic exclusion, however, is but one of several forms of evidence to support the ultimate fact of "deliberate denial to Negroes on account of race." White's complaint, read broadly, alleges not the prosecutor's discriminatory use of the peremptory challenge, but a judge-prosecutor-defense coun-

sel conspiracy to select an all-white jury. This allegation, although conclusory in nature, alleges a possible due process violation or an equal protection violation under *Swain.*

White's complaint seeks (1) damages, (2) release from confinement, and (3) the institution of criminal charges against the defendants. Assuming, without deciding, that White has alleged a constitutional violation, we address in turn White's requested forms of relief.

## I. Damages.

### A. *Official Immunity*

At the outset, we consider the district court's holding that all three defendants had acted within their judicial or quasi-judicial capacities and thus had absolute immunity from civil liability. Although this holding was correct as to Judge Bloom and prosecutor Murphy, subsequent legal developments have rendered it erroneous as to court-appointed counsel Walsh.

■■■ A judge is immune from liability if (1) the judge had jurisdiction over the subject matter, and (2) the acts complained of were judicial acts, *i. e.,* performed within the judicial capacity. *Clark v. Taylor,* No. 79–2231, slip op. at 6–7 (D.C.Cir. Feb. 27, 1980); *see Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). Judge Bloom's actions fall within these categories. First, we note that the Circuit Court of the City of St. Louis is a court of general jurisdiction, having "original jurisdiction over all cases and matters, civil and criminal." Mo.Const. Art. V, § 14(a). Second, the judicial behavior White complains of— permitting White's absence during the jury impanelment proceeding and ruling against White's motions to dismiss counsel and to change venue—were "judicial acts" under the analysis suggested by *Stump v. Sparkman, supra.* The Court in *Stump* explained that whether an act is "judicial" depends

---

2. We pretermit for the moment the availability of defenses such as immunity and the applicability of a statute of limitations.

upon whether it is a function normally performed by a judge and whether the complaining party was dealing with the judge in his judicial capacity. 98 S.Ct. at 1107. Here, both factors indicate Judge Bloom's decisions were judicial acts. Permitting White to be absent during jury impanelment and refusing to dismiss White's counsel and to move the trial may have been actions taken in error, or arguendo may even have been done maliciously; but they were nevertheless done within the judicial capacity, and Judge Bloom is therefore immune.

■ A prosecutor enjoys absolute immunity with respect to initiating a prosecution and presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 424–28, 96 S.Ct. 984, 992–94, 47 L.Ed.2d 128 (1976). The prosecutorial acts specifically complained of here—impaneling an all-white jury in White's absence and later stating that White had been present—occurred, if they occurred at all, while Murphy was presenting the state's case. He is accordingly immune from liability.

■ The district court held that defendant Walsh, as a court-appointed defense counsel, enjoyed an absolute immunity akin to that enjoyed by a judge or prosecutor. This position, although it had been adopted by at least four circuits,[3] is no longer tenable after the recent decision of *Ferri v. Ackerman*, —— U.S. ——, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). The *Ferri* Court reasoned that while the prospect of personal litigation would impede the performance of the function of prosecutor or judge, the prospect of a malpractice suit by a criminal defendant would not conflict with the competent performance of the function of criminal defense counsel. *Id.* 100 S.Ct. at 409. An important reason supporting common law immunity for prosecutors and judges therefore does not support a like immunity

for court-appointed attorneys.[4] Although *Ferri* involved a state malpractice action, its logic extends to section 1983 claims; its broad holding is that the federal common law immunity available to prosecutors and judges, *Imbler v. Pachtman, supra*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128; *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), is not available to court-appointed attorneys.

■ Walsh next contends that White's damage claim can be dismissed as barred by a statute of limitation. Because 42 U.S.C. §§ 1983, 1985 do not contain their own periods of limitation, the controlling period would ordinarily be the most appropriate one provided by state law. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Green v. Ten Eyck*, 572 F.2d 1233, 1237 (8th Cir. 1978). Defendants submit, and we accept, that the appropriate statute here is Mo.Ann.Stat. § 516.130(1). *See Peterson v. Fink*, 515 F.2d 815, 816 (8th Cir. 1975). That section provides that an aggrieved party has three years to bring "[a]n action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity and in virtue of his office, or by the omission of an official duty * * *." Because the jury impanelment occurred February 26, 1975, and the complaint was filed June 1979, it is contended the statute has run.

■ Assuming a judge-prosecutor-defense counsel conspiracy has been adequately pleaded, we cannot agree that the statute of limitations is necessarily a bar. According to the complaint, defendant Walsh did not inform White as to the status of his appeal. Nor, insofar as the appellate opinion indicates, did Walsh raise the matter of the allegedly unconstitutional jury selection. *See State v. White, supra*, 549 S.W.2d 914. It is arguable that this behavior was

---

3. *Robinson v. Bergstrom*, 579 F.2d 401 (7th Cir. 1978); *Miller v. Barilla*, 549 F.2d 648 (9th Cir. 1977); *Minns v. Paul*, 542 F.2d 899 (4th Cir. 1976); *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973).

4. The Court determined that although immunity for court-appointed defense counsel might still be justified by the need to induce attorneys to represent indigent criminal defendants, that justification is directed to Congress, not the courts. 100 S.Ct. at 409–10.

part of a continuing conspiracy to conceal the defendants' complicity in the conspiracy to impanel an all-white jury. In Missouri the period of limitation for damages based on conspiracy begins to run upon occurrence of the last overt act resulting in damage to plaintiff. *Rippe v. Sutter*, 292 S.W.2d 86, 90 (Mo.1956). Because it appears this action was filed within three years of the last overt act of what may have been a continuing conspiracy to deprive White of constitutional rights, we cannot say that any claim stated in the complaint is barred by the three-year statute of limitations. Compare *Slavin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978).

Walsh also contends he cannot be held liable for violations of constitutional rights because he was not acting under color of state law. As Walsh points out, this circuit has repeatedly held that both retained and appointed attorneys are not liable for deprivation of constitutional rights for the reason that they do not act under color of state law. *See Harley v. Oliver*, 539 F.2d 1143, 1145–46, 1146 n.8 (8th Cir. 1976) and cases cited therein.

Assuming a conspiracy with public officials has been adequately pleaded, however, Walsh may be regarded as acting under color of state law, his own capacity as a private party notwithstanding. *See Adickes v. S. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 75 (8th Cir. 1976).

A final consideration, not raised in the briefs, is whether Walsh may take advantage of the fact that both of his alleged co-conspirators are absolutely immune from liability. Otherwise stated, the question is whether Walsh, not immune in his own capacity, nevertheless enjoys "derivative immunity" by virtue of the fact that the only public conspirators are immune. Many courts of appeals cases have adopted a per se rule that a private person is not liable for damages under section 1983 or section 1985 when his alleged co-conspirators have absolute immunity. *See* cases cited in *Stump v. Sparkman, supra*, 98 S.Ct. at 1109 n.13

(1978); *Sparks v. Duval County Ranch Co.*, 604 F.2d 976, 986–89 (5th Cir. 1979) (en banc) (Coleman & Ainsworth, JJ., dissenting), *cert. granted sub nom. Dennis v. Sparks*, —— U.S. ——, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980); *Sparkman v. McFarlin*, 601 F.2d 261, 265 n.4 (7th Cir. 1979) (en banc) (Sprecher, J., concurring). The First and Fifth Circuits, however, have recently held that, in at least some instances, the private co-conspirator's liability is independent of whether his public co-conspirator is immune from liability. *Sparks v. Duval County Ranch Co., supra; Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976). The Seventh Circuit has indicated that its approach will be to sustain complaints against private persons who conspire with immune public officials if the allegations of conspiracy are sufficiently specific. *See, e. g., Sparkman v. McFarlin, supra*, 601 F.2d at 262–69. *See also Harley v. Oliver, supra*, 539 F.2d 1143, 1146 (8th Cir. 1976).

It is our view that the Seventh Circuit has taken a sound approach, one that is sensitive to both the policies underlying official immunities and the policies favoring federal recovery from private conspirators. See *Sparkman v. McFarlin, supra*, 601 F.2d at 262–69. We therefore remand for further consideration by the district court of White's conspiracy claim against Walsh in accordance with the views expressed herein.

II. Equitable Relief.

White seeks, in addition to damages, release from confinement and institution of criminal charges. That relief is not available here. First, because White challenges the fact of his confinement rather than its conditions, his sole recourse is to seek habeas corpus relief under 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). A prerequisite to that relief is the exhaustion of state post-conviction remedies, such as proceedings in the Missouri state courts under Mo.S.Ct.R. 27.26. *See* 28 U.S.C. § 2254(b). White's pleadings do not allege exhaustion, and in fact admit ex-

haustion is lacking. Second, the standing of White, as a private party, to compel criminal prosecution is at best unsure. *See generally* K. C. Davis, Administrative Law Treatise § 4.07 (1958). In any event, the criminal statute White apparently has in mind (18 U.S.C. § 242, the criminal analog of 42 U.S.C. § 1983) is enforced by a federal prosecutor; only state officials were made party to this suit.

In summary we affirm with regard to the dismissal of appellant's claims against Lackland Bloom and Daniel Murphy; we reverse the dismissal of appellant's claim against Robert J. Walsh on the ground of immunity and remand for further consideration of appellant's conspiracy claim in accordance herewith.

ARNOLD, Circuit Judge, concurring in part and dissenting in part.

I agree with the Court in all respects except as to the standards to be employed in judging the sufficiency of pleadings in this kind of case. The Court's citations, *ante*, p. 281, indicate that the complaint here must be "specific" in alleging conspiracy. The intention is apparently to impose a special requirement on complaints alleging § 1983 conspiracies between private parties and immune public officials.

I cannot agree that this complaint should be judged by standards more stringent than those applicable to pleadings generally under the Federal Rules of Civil Procedure. In my view, the correct rule is stated in the dissenting opinion of Judge Swygert in *Sparkman v. McFarlin*, 601 F.2d 261, 269 (7th Cir. 1979) (en banc). The rule announced by the Court, though not so intended, will necessarily have a more severe impact on *pro se* plaintiffs. It will be difficult for them to understand how to draft, or amend, pleadings to comply with this special requirement.

It may be that this particular complaint, on remand, should be dismissed for failure to state a claim. I intimate no view on that question. My position here is limited to disagreement with the Court with regard to the proper standard to use in assessing the sufficiency of the pleading.

I respectfully dissent in part.