# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1135

_____

Oglala Sioux Tribe; Rosebud Sioux Tribe, as parens patriae, to protect the rights of their tribal members; Madonna Pappan; Lisa Young, individually and on behalf of all other persons similarly situated,

*Plaintiffs - Appellees*,

v.

Lisa Fleming, in her official capacity,

*Defendant*,

Mark Vargo, in his official capacity,

*Defendant - Appellant*,

Honorable Craig Pfeifle; Lynne A. Valenti, in their official capacities,

*Defendants*.

------------------------------

Cherokee Nation of Oklahoma; ICWA Law Center; National Congress of American Indians; National Indian Child Welfare Association; Navajo Nation;

*Amici on Behalf of Appellee(s)*.

_____

No. 17-1136

_____

Oglala Sioux Tribe; Rosebud Sioux Tribe, as parens patriae, to protect the rights of their tribal members; Madonna Pappan; Lisa Young, individually and on behalf of all other persons similarly situated,

*Plaintiffs - Appellees*,

*v.*

Lisa Fleming; Mark Vargo, in their official capacities,

*Defendants*,

Honorable Craig Pfeifle, in his official capacity,

*Defendant - Appellant*,

Lynne A. Valenti, in her official capacity,

*Defendant*.

_____

No. 17-1137

_____

Oglala Sioux Tribe; Rosebud Sioux Tribe, as parens patriae, to protect the rights of their tribal members; Madonna Pappan; Lisa Young, individually and on behalf of all other persons similarly situated,

*Plaintiffs - Appellees*,

*v.*

-2-

Lisa Fleming, in her official capacity,

*Defendant - Appellant*,

Mark Vargo; Honorable Craig Pfeifle, in their official capacities,

*Defendants*,

Lynne A. Valenti, in her official capacity,

*Defendant - Appellant*.
_____

Appeals from United States District Court
for the District of South Dakota - Rapid City
_____

Submitted: February 13, 2018
Filed: September 14, 2018
_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]
_____

COLLOTON, Circuit Judge.

The Oglala Sioux Tribe, the Rosebud Sioux Tribe, and tribal members Madonna Pappan and Lisa Young brought this action against various South Dakota officials under 42 U.S.C. § 1983. They challenged procedures used in proceedings brought by the State to remove children temporarily from their homes in exigent circumstances. The plaintiffs alleged that the defendants were engaged in ongoing violations of the Due Process Clause of the Fourteenth Amendment and the Indian Child Welfare Act

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

-3-

(ICWA), 25 U.S.C. § 1901 *et seq.*, because their policies and practices deprived Indian parents of a meaningful hearing after their children were taken into temporary state custody.

The district court denied the defendants' motion to dismiss on jurisdictional grounds, and granted partial summary judgment for the plaintiffs on several of their statutory and constitutional claims. The court then entered a declaratory judgment and a permanent injunction. After declaring certain rights of Indian parents, custodians, children, and Tribes at hearings held within 48 hours of the State assuming temporary custody of a child, the court ordered the Department of Social Services (DSS) and the State's Attorney to implement certain procedures to protect these rights.

The defendants appeal, and challenge both the district court's assertion of jurisdiction and its decision to grant declaratory and injunctive relief. We have jurisdiction to review the order granting the permanent injunction under 28 U.S.C. § 1292(a)(1). We also have jurisdiction to consider orders granting declaratory relief and partial summary judgment that are incorporated by, and inextricably bound up with, the injunction. *FDIC v. Bell*, 106 F.3d 258, 262-63 (8th Cir. 1997); *Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 648-49 (8th Cir. 1996).

We ultimately conclude that the district court should have abstained from exercising jurisdiction under principles of federal-state comity articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and later cases. We thus vacate the court's orders granting partial summary judgment and declaratory and injunctive relief, and remand with instructions to dismiss the claims that gave rise to the orders.[1]

---

[1]The district court has not yet resolved plaintiffs' claims relating to DSS's alleged failure to train its staff members adequately. These claims are not before us on appeal, and we do not address them.

I.

South Dakota law establishes a process for the removal of children from their homes in exigent circumstances. *See* S.D. Codified Laws § 26-7A-1 *et seq.* A law enforcement officer may take a child into temporary state custody without a court order if the officer reasonably believes that there is an "imminent danger to the child's life or safety and there is no time to apply for a court order." *Id.* § 26-7A-12(4). Alternatively, a court may order that the State take temporary custody of a child upon application by a state's attorney, DSS social worker, or law enforcement officer. The application must set forth "good cause to believe . . . [t]here exists an imminent danger to the child's life or safety and immediate removal of the child from the child's parents, guardian, or custodian appears to be necessary for the protection of the child." *Id.* § 26-7A-13(1)(b).

The State may not hold a child in temporary custody for longer than 48 hours, excluding weekends and court holidays, unless it files a petition for temporary custody. *Id.* § 26-7A-14. The statute also requires a temporary custody hearing within 48 hours after the child is taken into custody to determine whether temporary custody should be continued. *Id.* § 26-7A-15. The parties describe this proceeding as the "48-hour hearing." South Dakota circuit courts have original jurisdiction over these proceedings. *Id.* § 26-7A-2.

Under South Dakota law, at the 48-hour hearing, "the court shall consider the evidence of the need for continued temporary custody of the child in keeping with the best interests of the child." *Id.* § 26-7A-18. The 48-hour hearings are "conducted under rules prescribed by the court," and neither the rules of civil procedure nor the rules of evidence apply. *Id.* § 26-7A-56. "The rules may be designed by the court to inform the court fully of the exact status of the child and to ascertain the history, environment, and the past and present physical, mental, and moral condition of the child and the child's parents, guardian, and custodian." *Id.*

-5-

At the conclusion of a 48-hour hearing, the court may order release of the child to his or her family or continued custody "under the terms and conditions for duration and placement that the court requires." *Id.* § 26-7A-19. If the court orders a child to remain in state custody after the 48-hour hearing, but has not determined that the child is abused or neglected, then South Dakota requires the court to "review the child's temporary custody placement at least once every sixty days." *Id.* § 26-7A-19(2).

The plaintiffs in this case are two Indian Tribes—the Oglala Sioux Tribe and the Rosebud Sioux Tribe—and a class of individual plaintiffs represented by Madonna Pappan and Lisa Young. In their complaint, the plaintiffs alleged that the defendants violated the Due Process Clause of the Fourteenth Amendment and the ICWA by denying Indian parents a meaningful post-deprivation hearing after their children were taken into temporary state custody. The defendant officials are the Secretary of the South Dakota Department of Social Services and the head of Child Protective Services for Pennington County (together, "the DSS Defendants"), the State's Attorney for Pennington County, and the presiding judge of the Seventh Judicial Circuit Court of the State of South Dakota, all in their official capacities.

The Tribes assert standing under the *parens patriae* doctrine, alleging that they seek "to vindicate rights afforded to their members." They claim "a close affiliation, indeed kinship, with respect to the rights and interests at stake in this litigation." They further allege that "[t]he future and well-being of the Tribes is inextricably linked to the health, welfare, and family integrity of their members." The Tribes also seek to vindicate their own rights under the ICWA.

The named individual plaintiffs, Pappan and Young, both reside in Pennington County and are members of the Oglala Sioux Tribe and the Standing Rock Sioux Tribe, respectively. They claim that they "are not seeking to interfere with, or overturn decisions in, their own cases but rather are seeking to expose and challenge systemic policies, practices, and customs of the Defendants that violate federal law."

Both Pappan and Young have two children who were previously taken into State custody under allegations of abuse or neglect. The children remained in State custody for months before returning home. According to the complaint, both mothers "suffered, and watched their children suffer, extreme emotional and psychological trauma as a result of this forced separation." Pappan and Young brought their claims on behalf of themselves and "all other members of federally recognized Indian tribes who reside in Pennington County, South Dakota and who, like the plaintiffs, are parents or custodians of Indian children." The district court certified a class.

The plaintiffs alleged that it was "[t]he policy, practice, and custom of the Defendants . . . to wait at least sixty days (and more often ninety days) before providing parents whose children have been removed from their custody with adequate notice, an opportunity to present evidence on their behalf, an opportunity to contest the allegations, and a written decision based on competent evidence." They asserted that the 48-hour hearings did not provide these protections. So they sought declaratory and injunctive relief to ensure that Indian families and Tribes were given "adequate notice and a meaningful hearing at a meaningful time following the removal of Indian children from their homes by state officials," as allegedly required by the Due Process Clause and the ICWA.

The defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that the plaintiffs lacked standing under Article III, and that the district court was required to abstain from exercising jurisdiction under the doctrine of *Younger v. Harris*. The district court denied the motion.

Thereafter, the district court granted summary judgment for the plaintiffs on the merits and granted declaratory and injunctive relief. The court ruled that the defendants' practices and policies at the 48-hour hearings violated both § 1922 of the ICWA and the Due Process Clause. The district court declared that Indian children,

parents, custodians, and Tribes have rights at the 48-hour hearings to "adequate notice," to present evidence and subpoena witnesses, to cross-examine DSS witnesses, to receive the assistance of court-appointed counsel if indigent, and to a decision based on the evidence presented at the hearing. Relying on § 1922, the court declared that the State may continue temporary custody of a child after a 48-hour hearing only if it establishes that temporary custody is "necessary to prevent imminent physical damage or harm to the child." If the State does continue temporary custody, the court ordered that DSS must immediately report to the circuit court when the risk of imminent physical damage or harm subsides, and return the child to a parent or custodian at that time. The district court further declared that § 1922 does not permit the State to consider emotional damage or harm.

The declaratory judgment went into some detail on the scope of these rights. For example, the court defined adequate notice to mean that all petitions for temporary custody must include information about the State's burden of proof. As to the right to cross-examination, the court declared that parents, custodians, and Tribes have the right to cross-examine all witnesses "whose statements form the factual basis for any document submitted to the court for consideration during the 48-hour hearing." The court also permanently enjoined the DSS Defendants and the State's Attorney from violating the constitutional and statutory rights declared by the court, and ordered them to comply with the requirements set forth in the declaratory judgment. The court did not order injunctive relief against the presiding judge. *See* 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.").

II.

There are several threshold jurisdictional issues in this appeal, including Article III standing and *Younger* abstention. The defendants raised both standing and abstention in the district court. On appeal, they focus on abstention. Of course, we have an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits, even when no party raises the issue. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-101 (1998). But when both standing and abstention are at issue, we may consider either one first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999); *Steel Co.*, 523 U.S. at 100 n.3.

The district court did not address standing of the individual plaintiffs but concluded that the Tribes had standing under the doctrine of *parens patriae*. The court, quoting 25 U.S.C. § 1902, reasoned that the action was "inextricably bound up with the Tribes' ability to maintain their integrity and 'promote the stability and security of Indian tribes and families.'" The court concluded that abstention was not warranted because the plaintiffs sought only "prospective relief." The court later acknowledged that "48-hour hearings involving Indian children will continue to occur during the pendency of this litigation," but still declined to abstain on the view that the relief requested by the plaintiffs would not "interfere" with ongoing proceedings. We review the district court's decision on abstention for abuse of discretion, but exercise plenary review over underlying legal determinations. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004).

We need not address whether any of the plaintiffs satisfy the requirements for Article III standing, because the district court should have abstained under *Younger*. Abstention is an exception to the general rule that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). The *Younger* line

of cases "counsels federal-court abstention when there is a pending state proceeding" of a certain type. *Moore v. Sims*, 442 U.S. 415, 423 (1979). The doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Id. Younger* involved state criminal proceedings, but abstention also applies to civil enforcement proceedings that are "akin to a criminal prosecution" in "important respects." *Sprint*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

South Dakota's temporary custody proceedings are civil enforcement proceedings to which *Younger* principles apply. In *Moore*, the Court held that a federal court should have abstained from intervening in a state-initiated proceeding to gain custody of children allegedly abused by their parents. 442 U.S. at 423, 435. The Court observed that the State was party to the proceedings, and that "the temporary removal of a child in a child-abuse context is . . . 'in aid of and closely related to criminal statutes.'" *Id.* at 423 (quoting *Huffman*, 420 U.S. at 604).

*Sprint* cited *Moore* with approval, 571 U.S. at 79, and we see no meaningful distinction between the custody proceedings in *Moore* and the temporary custody proceedings in South Dakota. The State is a party to these proceedings and initiates them by filing a petition for temporary custody. *See* S.D. Codified Laws §§ 26-7A-9, 26-7A-14. South Dakota law provides for an investigation by both the State's Attorney and DSS upon reported abuse or neglect of a child, after which the State's Attorney may "[f]ile a petition to commence appropriate proceedings." *Id.* § 26-7A-10(5). And because the proceedings are for the purpose of "protecting the child from abuse or neglect," *id.* § 26-7A-6, they are closely related to criminal statutes and potentially in aid of their enforcement.

The plaintiffs nonetheless argue that *Younger* is inapplicable because there is no ongoing state proceeding and because they lack an adequate opportunity in state proceedings to raise their federal claims. These are additional factors appropriately

-10-

considered by a federal court before invoking *Younger*. *See Sprint*, 571 U.S. at 81; *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The district court accepted the plaintiffs' argument and declined to abstain based on these factors.

According to the plaintiffs, they sought only prospective relief aimed at future 48-hour proceedings, and the federal proceeding would not interfere with a pending state proceeding. Even the district court, however, acknowledged that "48-hour hearings involving Indian children will continue to occur during the pendency of this litigation," and we agree. *Younger* may apply even if a 48-hour hearing is not in session at the precise moment when the district court grants relief. The plaintiffs do not dispute that some Indian children were in temporary custody and under the continuing jurisdiction of the circuit court while this federal case was pending. *See* S.D. Codified Laws § 26-7A-19(2). In those circumstances, even if a 48-hour hearing were not in session, temporary custody proceedings would be "ongoing," and the proposed relief would interfere with the ongoing proceedings.

The district court addressed this concern by concluding that the requested relief would not "interfere" with ongoing 48-hour hearings. The court thought the proposed relief instead would "support the state's interest involving the protection of Indian children in abuse and neglect cases." This reasoning misunderstands the sort of interference that *Younger* is designed to prevent. The plaintiffs seek an order that would dictate a host of procedural requirements for the ongoing state proceedings. The question under the abstention doctrine is not whether the claims have merit such that the exercise of federal jurisdiction would "support the state's interest" in affording its residents protection under the law. The issue is whether the federal court should refrain from exercising jurisdiction and allow the claims to be resolved in the state proceedings. A federal court order dictating what procedures must be used in an ongoing state proceeding would "interfere" with that proceeding by inhibiting "the legitimate functioning of the individual state's judicial system." *Bonner v. Circuit*

-11-

*Court of City of St. Louis*, 526 F.2d 1331, 1336 (8th Cir. 1975); *see also J.P. v. DeSanti*, 653 F.2d 1080, 1084 (6th Cir. 1981); *Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973) (per curiam).

Even setting aside the question of "ongoing" temporary custody proceedings, plaintiffs may not circumvent the abstention doctrine by attempting to accomplish the same type of interference with state proceedings through a claim for prospective relief. In *O'Shea v. Littleton*, 414 U.S. 488 (1974), the Court long ago directed that abstention is warranted when plaintiffs seek "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 500.

The plaintiffs in *O'Shea* sought to enjoin state court judges from carrying out allegedly unconstitutional policies and practices relating to bond-setting, sentencing, and jury fees in criminal cases. *Id.* at 491-92. Even though the plaintiffs did not seek to invalidate any statute or enjoin any prosecution, the Court recognized that the plaintiffs sought "nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent." *Id.* at 500. The Court explained that "because an injunction against acts which might occur in the course of future criminal proceedings would necessarily impose continuing obligations of compliance," alleged noncompliance with the injunction would give rise to contempt proceedings in federal court. *Id.* at 501-02. But "such a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint" that the Court recognized in *Younger* and its progeny. *Id.* at 502.

This court reached a similar conclusion in *Bonner*. In that case, twenty black prisoners alleged that officials in St. Louis had "joined in a systematic racially discriminatory conspiracy" to coerce black citizens into pleading guilty to criminal

charges. 526 F.2d at 1333. The prisoners did not "challenge their present incarceration or the legality of their sentences," but sought declaratory and injunctive relief directed at "possible future recurrences of the alleged illegal acts." *Id.* at 1335. Applying *O'Shea*, we concluded that abstention was warranted because "a federal court should not intervene where such interference unduly inhibits the legitimate functioning of the individual state's judicial system." *Id.* at 1336.

Other circuits have concluded that abstention is required in similar circumstances. In *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), indigent fathers who were behind in their child support and alimony payments sued in federal court, claiming that they were routinely denied due process in state civil contempt proceedings. *Id.* at 2. The plaintiffs alleged that "the juvenile court judges, as a matter of policy, denied fathers their right to counsel, denied them the right to confront and cross-examine witnesses, and denied them the right to testify and present witnesses [on] their behalf." *Id.* They sought declaratory and injunctive relief. *Id.* Although the plaintiffs urged that they were not seeking to interfere in pending proceedings and sought only prospective relief, the Sixth Circuit concluded that abstention was proper because "federal interference with the state proceedings would be as serious here as it was feared to be in *O'Shea*." *Id.* at 8; *see also Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1267-72 (10th Cir. 2002); *Luckey v. Miller*, 976 F.2d 673, 676-79 (11th Cir. 1992); *Wallace*, 520 F.2d at 404-09.

The relief sought by the plaintiffs here, although prospective in nature, warrants abstention for analogous reasons. The plaintiffs do not seek to invalidate a state statute or enjoin a temporary custody proceeding, but they pray for relief that will "be operative only where permissible state [proceedings] are pending against one or more of the beneficiaries of the injunction." *O'Shea*, 414 U.S. at 500. The relief requested would interfere with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements at future 48-hour hearings. The district court also retained jurisdiction for the purpose of "enforcing and modifying"

its orders, and for "the purpose of granting additional relief as may be necessary and appropriate." As in *O'Shea*, failure to comply with the district court's injunction would subject state officials to potential sanctions for contempt of court, and place the district court in the position of conducting an ongoing "federal audit" of South Dakota temporary custody proceedings. *Id.* An injunction of the type contemplated by the plaintiffs and the district court "would disrupt the normal course of proceedings in state courts via resort to the federal suit for determination of the claim ab initio," just as would a request for injunctive relief from an ongoing state proceeding. *Id.* at 501.

The plaintiffs urge that abstention is unwarranted because the relief they seek resembles that which pretrial detainees sought in *Gerstein v. Pugh*, 420 U.S. 103 (1975). There, the Court held that *Younger* did not bar the plaintiffs' claim for relief because the injunction they sought "was not directed at the state proceedings as such, but only at the legality of pretrial detention without a judicial hearing." *Id.* at 108 n.9. *Gerstein* emphasized, however, that the legality of the plaintiffs' pretrial detention "could not be raised in defense of the criminal prosecution." *Id.* The Supreme Court later confirmed that abstention was inappropriate in *Gerstein* because the federal plaintiffs did not have "an opportunity to press [their] claim in the state courts." *Moore*, 442 U.S. at 432; *see also Middlesex*, 457 U.S. at 432. *Gerstein* therefore does not preclude abstention based on the type of relief sought here, as long as the plaintiffs have an opportunity to litigate their claims in the South Dakota courts.

Although the plaintiffs complain that state court proceedings do not afford parents an adequate opportunity to raise broad constitutional challenges under the Due Process Clause, they have not established that South Dakota courts are unwilling or unable to adjudicate their federal claims. State courts are competent to adjudicate federal constitutional claims, *Moore*, 442 U.S. at 430, and "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the

-14-

absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

In this very context, the South Dakota courts have adjudicated federal claims. In *Cheyenne River Sioux Tribe v. Davis*, 822 N.W.2d 62 (S.D. 2012), the Supreme Court of South Dakota resolved a petition for writ of mandamus that sought an order compelling a South Dakota circuit judge to apply procedural rights guaranteed by the ICWA at temporary custody hearings. *Id.* at 64-66. The availability of mandamus relief is sufficient to show that state proceedings provide an adequate opportunity to litigate federal claims. *See, e.g.*, *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 521 (5th Cir. 2004); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 202 (2d Cir. 2002). The Seventh Judicial Circuit Court, moreover, is a court of general jurisdiction, *March v. Thursby*, 806 N.W.2d 239, 243 (S.D. 2011), so Indian parents or Tribes could raise their federal claims in temporary custody proceedings. South Dakota law also provides a right to appeal at the conclusion of abuse and neglect proceedings, or after certain intermediate orders, *see* S.D. Codified Laws §§ 26-7A-30, 26-7A-86, 26-7A-87, 26-7A-90, and the state supreme court has discretion to "determine a moot question of public importance" if it decides that "the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions." *Larson v. Krebs*, 898 N.W.2d 10, 16-17 (S.D. 2017) (quoting *Cummings v. Mickelson*, 495 N.W.2d 493, 496 (S.D. 1993)).

The district court relied on *LaShawn A. v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993), and *Family Division Trial Lawyers of Superior Court-D.C., Inc. v. Moultrie*, 725 F.2d 695 (D.C. Cir. 1984), in concluding that the plaintiffs lacked an adequate opportunity to press their claims in state court. In those cases, however, the D.C. Circuit concluded that family division superior court proceedings were not an adequate forum to adjudicate federal constitutional claims, because of their limited purpose and inability to provide appropriate relief. *LaShawn*, 990 F.2d at 1323; *Moultrie*, 725 F.2d at 703. The best evidence about South Dakota is that state

procedures provide an adequate remedy for alleged violations of federal law at 48-hour custody hearings, and the plaintiffs have not presented unambiguous authority to the contrary.

Finally, the plaintiffs point to *Younger*'s recognition that even when ordinary abstention principles favor dismissal, the exercise of federal jurisdiction might be warranted where "a statute [is] flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). This exception for "patently unconstitutional" actions is "extremely narrow," *Plouffe v. Ligon*, 606 F.3d 890, 894 (8th Cir. 2010), and it does not apply here. The plaintiffs do not challenge the constitutionality of a statute at all, and they have not established that the alleged procedural deficiencies at the 48-hour hearings threaten "irreparable loss [that] is both great and immediate." *Younger*, 401 U.S. at 45 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 (1926)). Of course, child custody proceedings involve interests of great importance to parents and children, but it would "invert[] traditional abstention logic" to say that "because the interests involved are important, abstention is inappropriate." *Moore*, 442 U.S. at 434-35. "Family relations are a traditional area of state concern," and federal courts should be "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation." *Id.* at 435.

\*        \*        \*

For the foregoing reasons, we vacate the orders granting partial summary judgment and declaratory and injunctive relief, and remand with instructions to dismiss the claims that gave rise to the orders.

_____