OPINION OF THE COURT
Eugene E. Peckham, S.
The mother and father of Derek have petitioned to be appointed as his guardians under article 17-A of the Surrogate’s Court Procedure Act on the grounds that he is developmentally disabled. Mental Hygiene Legal Service has appeared as counsel for Derek and opposes the petition.
Derek was assaulted while traveling in Spain in 2003 when he was 19 and suffered a traumatic brain injury and spinal cord injuries resulting in paraplegia. It is alleged he also suffers from depression, delusions, poor impulse control and inability to make reasoned decisions. At the time of the petition, Derek was a patient on the psychiatric unit of Binghamton General Hospital.
Derek has now moved by his attorney to strike the affirmations of the two physicians submitted with the petition and dismiss the petition. The affirmations have been filed as required by SCPA 1750-a. One affirmation was by Dr. Factourovich, Derek’s treating psychiatrist, and the second was by Dr. Major, the supervising psychiatrist at the hospital. Both physicians indicated in their affirmations that they had reviewed the records maintained by the hospital about Derek. The basis of the motion is that the affirmations violate the physician-patient privilege set forth in CPLR 4504. The application of the privilege to article 17-A proceedings is a matter of first impression in New York.
The physician-patient privilege is a rule of evidence in New York and is applicable to all types of communication by the patient to the physician in his professional capacity. Several cases have considered the availability of the privilege when a guardian was sought under article 81 of the Mental Hygiene Law. Those cases, except for one early case, have uniformly held that the privilege applies in contested guardianship proceedings unless the respondent affirmatively places his or her medical condition in issue. (Matter of Rosa B.-S. [William M.B.], 1 AD3d 355 [2d Dept 2003]; Matter of Bess Z., 27 AD3d 568 [2d Dept 2006]; Matter of Tara X., NYLJ, Sept. 18, 1996, at 27, col 1 [Sup *1134 Ct, Suffolk County]; Matter of Seidner, NYLJ, Oct. 8, 1997, at 28, col 4; contra, Matter of Goldfarb, 160 Misc 2d 1036 [Sup Ct, Suffolk County 1994]; see also Dillenbeck v Hess, 73 NY2d 278 [1989] [in a personal injury case, unless the defendant affirmatively places his or her medical condition in issue the physician-patient privilege prevents disclosure].) Derek has not placed his condition in issue. As stated by Justice Prudenti in her seminal decision Tara X: “To hold otherwise would afford respondents in Article 81 proceedings a modicum of due process which falls below that afforded their counterparts in other legal proceedings and would effectively nullify the heavy quantum of proof imposed upon the petitioners seeking guardianship over non-consenting persons” (Matter of Tara X, at 27, col 3).
This court has previously indicated that “[t]he equal protection provisions of the federal and state constitutions would require that mentally retarded persons in a similar situation be treated the same whether they have a guardian appointed under article 17-A or article 81.” (Matter of B., 190 Misc 2d 581, 585 [Tompkins County Ct 2002].) “The essence of the right to equal protection of the laws is that all persons similarly situated be treated alike.” (20 NY Jur 2d, Constitutional Law § 343.) The United States Supreme Court has held that a rational basis standard applies to determine if distinctions in the state law affecting the mentally retarded comply with equal protection. (Cleburne v Cleburne Living Center, Inc., 473 US 432 [1985]; Heller v Doe, 509 US 312 [1993].)
The Legislature has recognized that the Equal Protection Clause applies to persons with mental disabilities by stating:
“No health care decision shall be influenced in any way by:
“(i) a presumption that persons with mental retardation are not entitled to the full and equal rights, equal protection, respect, medical care and dignity afforded to persons without mental retardation or developmental disabilities.” (SCPA 1750-b [2] [c] [emphasis added].)
There is no rational reason why the respondent in a contested article 81 guardianship proceeding should be allowed to assert the physician-patient privilege while the respondent in a contested article 17-A guardianship proceeding cannot. Similarly, there is no rational reason why a respondent who is alleged in a guardianship proceeding to be developmentally disabled should have any different right to assert the privilege from a respondent who is alleged to be mentally retarded. In all three cases, *1135 mentally retarded, developmentally disabled or incapacitated person, the ultimate finding to be made by the court is that the respondent is unable to manage his or her personal or property affairs because of a lack of capacity. (Mental Hygiene Law § 81.02 [b] [1]; SCPA 1750 [1]; 1750-a [1].)
As indicated by Justice Prudenti in Tara X., the Due Process Clause of the federal and state constitutions would also prohibit a distinction in the application of the physician-patient privilege in the two types of guardianship proceedings. “Substantive due process affords protection against statutes that are arbitrary or unequal in their operation.” (20 NY Jur 2d, Constitutional Law § 396; Matter of Spielvogel v Ford, 1 NY2d 558, 562 [1956].) It would certainly be arbitrary to say that the respondent against whom a proceeding for the appointment of a guardian is brought can assert the physician-patient privilege in one type of proceeding, but not the other. That would be unequal operation of the law violative of due process.
In addition, the rules regarding confidentiality of patient information apply to Derek. Under the regulations for the Health Insurance Portability and Accountability Act (HIPAA) a health care provider, which includes doctors and hospitals, may disclose information about a patient upon authorization by the patient or pursuant to a court order. (45 CFR 160.103, 164.508, 164.512 [e].) In similar fashion, Mental Hygiene Law § 33.13 (c) provides that the records maintained by a mental health facility, which includes the psychiatric ward of a hospital (Mental Hygiene Law § 1.03 [6]), shall be disclosed only upon consent by the patient or court order. There was neither consent by Derek nor a court order in this case. Both physicians in their affirmations referred to the hospital records and thus the affirmations violated both the HIPAA regulations and the Mental Hygiene Law.
The court holds that the physician-patient privilege applies in contested article 17-A guardianship proceedings just as it does in contested article 81 proceedings. (Matter of Rosa B.-S., supra; Matter of Bess Z., supra.) As a result, the affirmations of Dr. Factourovich and Dr. Major must be stricken from these proceedings because of failure to observe both the physician-patient privilege and the patient confidentiality rules.
Of course, virtually all article 17-A proceedings are uncontested. The two certifications required by the statute are ordinarily provided by the doctors treating the mentally retarded or developmentally disabled person. Thus, the holding in this case is limited to contested proceedings.
*1136 However, just because the two affirmations are stricken does not mean the proceeding should be dismissed. There are sufficient allegations in the petition to create a question of fact as to whether Derek is developmentally disabled, such as that he is unable to make simple decisions, has refused medication and refused to attend scheduled medical appointments, and has refused to sign papers to secure medical benefits or to waive his student loan default. Most significantly it is alleged that while living at home in December 2005 he “became increasingly isolated, spending more and more time locked in his room over the course of approximately two weeks.” These allegations are sufficient to present triable issues of fact and so the motion to dismiss is denied. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]; Wanger v Zeh, 26 AD2d 729 [3d Dept 1966].)
Furthermore just because the two physicians’ affirmations which were submitted were stricken does not mean petitioners should not be given an opportunity to have Derek examined by two other nontreating physicians in order to provide the certifications required by SCPA 1750-a. Derek is required to cooperate and answer questions put to him by the examining physicians in a prehearing interview. (Ughetto v Acrish, 130 AD2d 12 [2d Dept 1987], appeal dismissed 70 NY2d 871 [1987].) Of course, such examining physicians should not be given access to Derek’s medical records without a court order or patient consent.