Melvyn KAUFMAN, Plaintiff–Appellant,

v.

Judith S. KAYE, in her capacity as Chief Justice of the Court of Appeals for the State of New York, A. Gail Prudenti, in her capacity as presiding Justice of the Appellate Division of the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, Defendants–Appellees.

Docket No. 05–5215–cv.

United States Court of Appeals, Second Circuit.

Argued: May 11, 2006.

Decided: Oct. 10, 2006.

Jonathan S. Massey (Stephen A. Saltzburg, Anthony Z. Roisman, Patrick J. Munson, Catherine A. Helwig, John M. Churneftsky, on the brief), National Legal Scholars Law Firm, for Plaintiff–Appellant.

Benjamin N. Gutman (Eliot Spitzer, Attorney General of the State of New York, Robert H. Easton, on the brief), for Defendants–Appellees.

Before WINTER, CABRANES, and RAGGI, Circuit Judges.

WINTER, Circuit Judge.

Melvyn Kaufman appeals from Judge Trager's dismissal of his complaint, which brought an action under 42 U.S.C. § 1983. Kaufman alleges that the procedure for assigning appeals among panels of judges in New York's Second Department of the Appellate Division violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment because it permits court staff to assign cases to panels of judges on a non-transparent, discretionary basis.

Based on *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), we affirm.

## BACKGROUND

Because this is an appeal from a dismissal for failure to state a claim, we view the allegations of the complaint in the light most favorable to appellant. *Desiderio v. Nat'l Ass'n of Securities Dealers,* 191 F.3d 198, 202 (2d Cir.1999).

Kaufman alleges the following. He lives in Mamaroneck, New York, in a gated community called Edgewater Point. The Edgewater Point Property Owners' Association (the "EPPOA") imposes various covenants that run with the property, and Kaufman complies with them, as do most of his neighbors. However, he alleges that "there are newer property owners who have chosen to disregard the restrictive covenants." Compl. at 24. These new property owners "became wealthy during the recent period of corporate excess and illegal financial schemes of the 1990's and purchased property in existing prestigious communities such as Edgewater Point as a validation of their heightened social status." *Id.* Nevertheless, they refuse to abide by the restrictive covenants, and the EPPOA "is unwilling to enforce the restrictive covenants against the non-complying property owners." *Id.* at 27.

Before bringing the present action, Kaufman had lost five cases in New York state court against various neighbors and entities in Mamaroneck. In these, he claimed that neighbors violated a covenant not to use homes in Edgewater Point for business purposes by renting out their house to tenants. *Kaufman v. Fass,* 302 A.D.2d 497, 756 N.Y.S.2d 247 (App.Div.2d Dept.2003). He also alleged that neighbors have allowed their parents to live rent-free in a house they owned in the community. *Kaufman v. Kehler,* 305

A.D.2d 636, 759 N.Y.S.2d 765 (App.Div.2d Dept.2003). He brought another action against Mamaroneck. *Kaufman v. Village of Mamaroneck,* 286 A.D.2d 666, 729 N.Y.S.2d 778 (App.Div.2d Dept.2001). He claimed that a neighbor defamed him. *Kaufman v. Farris,* 293 A.D.2d 654, 740 N.Y.S.2d 627 (App.Div.2d Dept.2002). Finally, he brought an action against the building inspector seeking revocation of building permits issued to neighbors who had submitted fraudulent applications. *Kaufman v. Office of Bldg. Inspector,* 295 A.D.2d 349, 743 N.Y.S.2d 880 (App.Div.2d Dept.2002).

After each case was dismissed in the trial court, Kaufman appealed to the Second Department of the New York Appellate Division. In the Second Department, Justice Gabriel M. Krausman and Justice Thomas A. Adams sat on four of the five panels hearing his appeals. Justice Stephen G. Crane sat on three of the five panels. Based on a statistical analysis, Kaufman claims that the assignment of judges to his cases was not random but "was intentional and not a mere accident, or coincidental." Compl. at 49. He also claims that Justices Krausman, Adams, and Crane "exhibited extreme bias against" him, Compl. at 50, and that all of the panels that heard his appeals decided against him "[d]espite the strong factual and legal basis for overturning the orders of the court below." Compl. at 51. Kaufman sought review of *Kehler* and *Fass* in the Court of Appeals. Those requests were denied. He petitioned the Supreme Court of the United States for certiorari for review of *Fass.* That request was also denied.

Three further Kaufman-initiated cases were pending when the present complaint was filed. On appeal to the Second Department, all three were scheduled for argument on the same day, although they involved different defendants and different issues. Each ended unsuccessfully for Kaufman. In those appeals, Justice Adams was on each panel.

Kaufman also notes that a $10,000 sanction was imposed on him by the Second Department for pursuing a frivolous appeal. This fine was imposed, according to Kaufman, "because the panel was not neutral and was biased against [him]." Compl. at 65.

Kaufman's complaint sought: (i) a declaration that the system for assigning cases among panels of judges in the Second Department of the Appellate Division violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (ii) an injunction requiring the New York state legislature to establish a new system of assigning appeals in the Second Department; (iii) vacatur of a number of Second Department decisions adverse to Kaufman; and (iv) vacatur of sanctions the Second Department has imposed on him.

Judge Trager granted appellees' motion to dismiss the complaint. He held that Kaufman's request for reversal of previously rendered decisions of the Second Department was barred by the *Rooker-Feldman* doctrine, *see District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and that his challenge to the Second Department's procedures failed because the federal Due Process Clause does not require random assignment of judges. Judge Trager also noted that, if the cases were purposely assigned to particular justices, doing so was reasonable because "the justices know the underlying factors of the cases and can more quickly dispose of a plaintiff's motion." *Kaufman v. Kaye,* 2005 WL 1923561 at *4 (E.D.N.Y.2005).

Kaufman brought the present appeal. Counsel for Kaufman explained at oral argument that he now seeks only a declaratory judgment that the non-transparent, non-random assignment procedures in the Second Department violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment and an injunction requiring the State of New York to establish a new system for assigning appeals in the Second Department.

## DISCUSSION

■ Even the relief now sought by Kaufman would be so intrusive in the administration of the New York court system that we must, based on applicable precedent, abstain. Under a controlling decision of the Supreme Court, federal courts may not entertain actions, like the present one, that seek to impose "an ongoing federal audit of state ... proceedings." *O'Shea v. Littleton,* 414 U.S. 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). In *O'Shea,* the plaintiffs sought injunctive relief against the allegedly racially discriminatory administration of the criminal justice system in an Illinois county. *Id.* at 491–92, 94 S.Ct. 669. The Court held in part that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials" would lead to the precise federal interference in state judicial proceedings that *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was designed to prevent. 414 U.S. at 500, 94 S.Ct. 669.

In *Younger,* the Supreme Court had explained that, in our federal system, a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." 401 U.S. at 44, 91 S.Ct. 746. *Younger* was a challenge to an ongoing state criminal case, but the doctrine has been extended with equal force to federal civil litigation challenging certain other state proceedings. *Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002).

■ We have previously examined the role of federal courts in civil litigation challenging the internal workings of state courts. *See Wallace v. Kern,* 481 F.2d 621 (2d Cir.1973) (*Wallace I*); *Wallace v. Kern,* 499 F.2d 1345 (2d Cir.1974) (*Wallace II*); *Wallace v. Kern,* 520 F.2d 400 (2d Cir.1975) (*Wallace III*). In these three related appeals, we rejected a series of attempts by the federal district court to impose new requirements and bail procedures on the New York State courts, for example, an injunction requiring the clerk of the state court to calendar all *pro se* motions filed by members of the plaintiff class, *Wallace I,* 481 F.2d at 622, and injunctions requiring evidentiary hearings and a written statement of reasons by the state judge for fixing bail. *Wallace III,* 520 F.2d at 403 (2d Cir.1975). In so holding, we wrote that "under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts." *Id.* at 405 (quoting *Wallace I,* 481 F.2d at 622 (2d Cir.1973)). We observed that the federal courts cannot "legislate and engraft new procedures upon existing state criminal practices." *Id.* at 404. Such "interference with the state criminal process in both pending and future bail proceedings," *id.* at 405 n. 9, would violate principles of comity set forth in *Younger. Id.* at 408. Our sister circuits are in agreement. *See Parker v. Turner,* 626 F.2d 1, 8 (6th Cir. 1980) (reading *O'Shea* to require that federal courts exercise "near-absolute restraint" in "situations where the relief sought would interfere with the day-to-day conduct of state trials"); *Anthony v. Council,* 316 F.3d 412, 421 (3d Cir.2003) (ab-

staining under *Younger* when federal relief would disrupt the New Jersey court system and lead to federal monitoring); *Joseph A. v. Ingram*, 275 F.3d 1253, 1271 (10th Cir.2002) (suggesting that federal oversight of state court operations would be a problem under *Younger*); *Pompey v. Broward County*, 95 F.3d 1543, 1548–49 (11th Cir.1996) (observing that federal court rulings that ordered interventions in the state courts presented an unseemly encroachment on federalism and comity); *Luckey v. Miller*, 976 F.2d 673, 677–79 (11th Cir.1992) (abstaining on *Younger* grounds because a federal order revamping the state's indigent defense system would inevitably interfere with state criminal proceedings); *Planned Parenthood League of Mass. v. Bellotti*, 868 F.2d 459, 467 (1st Cir.1989) (noting in *dicta* that if a case threatened "interference with ongoing state proceedings or practices," then authorities like *O'Shea* might be applicable); *Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir.1988) (noting that "a federal court ruling on the practices and procedures of the municipal court system ... would require supervisory enforcement of the ruling by the federal courts" and that "[t]his type of monitoring of state court procedures ... offends principles of federalism").

We see little difference between the relief sought here and that sought in *O'Shea* and the decisions cited in the preceding paragraph. To be sure, as appellant argues, the relief he now seeks in the federal courts would, if granted, leave "the state judiciary ... free to craft a remedy in the first instance." Appellant's Reply Br. At 27. However, any remedy fashioned by the state would then be subject to further challenges in the district court. Appellant—or any state court litigant dissatisfied with the panel of judges assigned to his or her appeal—could raise compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution or the terms of that injunction. Such challenges would inevitably lead to precisely the kind of "piecemeal interruptions of ... state proceedings" condemned in *O'Shea*. In short, we cannot resolve the issues raised here as to present assignment procedures without committing to resolving the same issues as to the remedy chosen by the state and as to the subsequent case-by-case implementation of the assignment procedures in the Second Department. This is exactly what *O'Shea* forbids.

█ Of course, as in *O'Shea*, Kaufman can raise his federal claims in the state proceedings and has in fact raised them in his prior cases. "[A]bstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir.2003) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). But abstention is inappropriate where "state law bars the effective consideration of [the] constitutional claims." *Spargo*, 351 F.3d at 78. Kaufman argues that he cannot obtain relief "under the same procedures [he] is now attacking as unconstitutional." Appellant's Reply Br. at 24. However, his response misunderstands the appropriate inquiry. We need ask only "whether the state's procedural remedies *could* provide the relief sought not whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Spargo*, 351 F.3d at 79 (quotation marks, alterations, and citation omitted). Without question, the New York courts can consider the constitutional questions Kaufman raises and order relief if they deem them to have merit.

Moreover, if he is dissatisfied with the decisions of the Appellate Division, he may

petition the New York Court of Appeals and the Supreme Court of the United States for review. *Id.* at 79 n. 14 (noting that abstention may still be "required even where only discretionary judicial review is available"). Kaufman makes no claim that the procedures of those tribunals are constitutionally suspect, and thus there is no reason to believe he cannot obtain any relief he deserves from them.

## CONCLUSION

We conclude that federal courts must abstain from consideration of the claims Kaufman raises here, and we therefore affirm the dismissal of his complaint.[1]

---

1. *"Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct,* 351 F.3d 65, 74 (2d Cir.2003). However, we may resolve the case on *Younger* grounds without deciding whether Kaufman has constitutional standing, a jurisdictional requirement, under *Lujan v.* *Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), because we may "dismiss an action on a non-merits ground before finding subject-matter jurisdiction." *Spargo,* 351 F.3d at 74; *see Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").