OPINION OF THE COURT
Margarita López Torres, S.
Before the court is a petition seeking to appoint the petitioner as guardian of the person of the respondent pursuant to article 17-A of the Surrogate’s Court Procedure Act. The petitioner alleges that the respondent is incapable of autonomous decision-making by reason of a diagnosis of intellectual disability and therefore requires the appointment of a guardian. If the petition is granted, the respondent will lose all legal authority and control over decisions regarding herself and her affairs, including medical decisions about her own treatment and placement in residential facilities. In light of the severe deprivation of individual liberty to the respondent that will result from granting the relief of plenary guardianship, and the inability of the respondent to afford counsel, the court determines that the assignment of counsel pursuant to SCPA 407 is constitutionally mandated for the reasons set forth below.
In certain of its proceedings, the Surrogate’s Court Procedure Act grants the court power to assign counsel to persons who are financially unable to obtain counsel, to be paid by public funds under article 18-B of the County Law. (See SCPA 407.) Parties eligible for court appointed counsel include (i) the respondent in a proceeding that may result in the termination of her parental rights,[1] (ii) the respondent who is surrendering her biological child for adoption,[2] (iii) the parent in an adoption proceeding who opposes the adoption of her child,[3] and (iv) the parent seeking custody of her child or defending her right to custody.[4]
In addition to these enumerated circumstances, and specifically applicable in this proceeding, the statute grants discretion to the court to assign counsel in other proceedings, providing “a judge may assign counsel to represent any adult . . . under this act if [she] determines that such assignment of counsel is mandated by the constitution of this state or of the United States.” (SCPA 407 [1] [b] [emphasis added].)
*1123 It is a cornerstone of our constitutional jurisprudence that no person shall be “deprived of life, liberty, or property, without due process of law,” under the Fifth and Fourteenth Amendments of the United States Constitution, and under article I, § 6, of the New York State Constitution. “At its core, the right to due process reflects a fundamental value in our American constitutional system.” (Boddie v Connecticut, 401 US 371, 374 [1971].) Consequently, when the State acts to remove an adult person’s decision-making power, thus depriving her of control over decisions affecting her life, liberty and property, the constitutional guarantee of due process requires notice, access, and a meaningful opportunity to be heard. (See e.g. Tennessee v Lane, 541 US 509 [2004].) Individuals living with disabilities are no less entitled to these constitutional guarantees of due process than persons who are not alleged to be under disability. “[P]ersons with disabilities have [a] right to recognition everywhere as persons before the law . . . [and] enjoy legal capacity on an equal basis with others in all aspects of life.” (Convention on the Rights of Persons with Disabilities, GA Res 61/611, art 12, UN Doc A/RES/61/611 [Dec. 6, 2006].) States are charged with an affirmative obligation to fulfill the promise of the Americans with Disabilities Act of 1990 “to assure equality of opportunity, full participation, independent living, and economic self-sufficiency” (42 USC § 12101 [a] [7]) for all individuals with disabilities. (See Olmstead v L.C., 527 US 581 [1999]; Report and Recommendations of the Olmstead Cabinet, http ://www. go vernor.ny. gov/ sites/governor, ny. gov/files/archive/ assets/documents/olmstead-cabinet-reportl01013.pdf [accessed Sept. 29, 2016].) Indeed, the highest Court in our state has pronounced “ [i]f the law recognizes the right of an individual to make decisions about . . . life out of respect for the dignity and autonomy of the individual, that interest is no less significant when the individual is mentally or physically ill.” (Rivers v Katz, 67 NY2d 485, 493 [1986], rearg denied 68 NY2d 808 [1986], quoting Matter of K.K.B., 609 P2d 747, 752 [Okla 1980].)
Equally recognized is the reality that “the right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.” (Powell v Alabama, 287 US 45, 68-69 [1932].) Deeming the assistance of counsel a necessary constitutional safeguard to ensure the fundamental human rights of life and liberty, the Supreme Court, in its landmark decision in Gideon v Wainwright (372 US 335 [1963]), *1124 held that the assistance of counsel is a fundamental right essential to a fair trial when a person’s liberty is threatened in criminal proceedings.
Gideon’s due process mandate has been extended to civil proceedings and quasi-criminal proceedings when fundamental interests no less important than freedom from incarceration are threatened. “The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.” (Mathews v Eldridge, 424 US 319, 333 [1976] [internal quotation marks omitted].) Civil litigation in which counsel is assigned for indigent parties include a myriad of areas in which personal liberty is very much at stake, such as habeas corpus actions, child custody cases, parole revocation proceedings, juvenile hearings, and civil commitment suits. (See e.g. Matter of Ella B., 30 NY2d 352 [1972] [parent in neglect proceeding facing termination of the right to custody of a minor child held to have the right to assigned counsel]; People ex rel. Rogers v Stanley, 17 NY2d 256 [1966] [mental health patient challenging institutional commitment has constitutional right to assigned counsel]; Matter of St. Luke’s-Roosevelt Hosp. Ctr. [Marie H.], 159 Misc 2d 932 [1993], affd 215 AD2d 337 [1st Dept 1995], affd 89 NY2d 889 [1996] [appointment of counsel constitutionally mandated for allegedly incapacitated adult who objects to nursing home facility placement]; People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376 [1971] [parolee has a right to counsel in parole revocation hearings]; Jacox v Jacox, 43 AD2d 716 [2d Dept 1973] [litigant had right to assigned counsel in matrimonial litigation]; but cf. Matter of Smiley, 36 NY2d 433 [1975]; Hotel Martha Wash. Mgt. Co. v Swinick, 66 Misc 2d 833 [App Term, 1st Dept 1971] [tenant demonstrating merit has due process right to counsel in eviction proceeding]; Matter of Linda G. v Theodore G., 74 Misc 2d 516 [Fam Ct, Richmond County 1973] [custodial grandmother entitled to assigned counsel in support proceeding]; 444 W. 54th St. Tenants Assoc. v Costello, 138 Misc 2d 5 [Civ Ct, NY County 1987] [assignment of counsel for tenant in military service in eviction proceeding].) Notably, minors, possessing no legal capacity, are routinely assigned counsel[5] to advocate for their positions in a variety of civil proceedings, including delinquency, foster care, *1125 custody and other matters brought before the Family Court (Family Ct Act § 249), underscoring the recognition that even the most unsophisticated voices have a right to be heard in crucial matters that affect their lives. Similarly, the right to assigned counsel is constitutionally mandated for persons alleged to be incapacitated in certain guardianship proceedings pursuant to article 81 of the Mental Hygiene Law (see Matter of St. Luke’s-Roosevelt Hosp. Ctr.). Even in the area of employment law, a statutory right to counsel, paid by the State, exists for unemployment insurance claimants who are defending an appeal of a favorable decision from the Unemployment Insurance Appeal Board. (See Labor Law § 538 [1] [e].)
In addition, in the civil arena of Housing Court, the appointment of counsel for indigent individuals facing eviction is recently being supported in the New York City Legislature[6] and by the judiciary, led by Chief Judge Janet DiFiore, who urges continued focus on the provision of much-needed legal assistance and whose budget for the 2016-2017 fiscal year grants an unprecedented $100 million to civil legal services providers throughout the state, and by former Chief Judge Jonathan Lippman. Chief Judge Lippman, who vigorously sought to ensure legal representation in civil proceedings for low-income individuals involving fundamental human needs, emphasized that
“[i]n our adversary system of justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth [citing Gideon v Wainwright].
“Nearly half a century later, it is an equally obvious truth in civil proceedings involving fundamental human needs, it is extremely difficult, if not *1126 impossible, for a person to be assured a fair outcome without a lawyer’s help . . . No issue is more fundamental to our constitutional mandate of providing equal justice under law than ensuring adequate legal representation . . . [T]here is no substitute for full legal representation, especially for the most vulnerable litigants in our society— the elderly, children, struggling families, people with disabilities and abuse victims.”[7] (Emphasis added.)
In recognition of the need for legal services for the indigent, the New York State Legislature passed a concurrent resolution in support, albeit symbolic, of the provision of civil legal services to the poor, finding that
“it remains the case today that a vast number of New Yorkers who live in poverty actually do not have access to effective legal assistance when necessary to realize or protect the essentials of life; and [whereas], [t]o change this dynamic, it should be the policy of the state of New York, that every New Yorker in need have effective legal assistance in matters involving the essentials of life (housing, family matters, access to healthcare, education and subsistence income).”[8]
Given that the right to assigned counsel is recognized in a myriad of quasi-criminal and civil proceedings, ranging from military eviction and child custody, to involuntary commitment and employment litigation, there is no question that in article 17-A proceedings, where a person’s decision-making authority in every aspect of her life is at stake, constitutional protections are warranted. The resulting deprivation of fundamental liberty interests inherent in the appointment of an article 17-A guardian constitutes “a loss of liberty as significant as those which previously have triggered the appointment of counsel.” (Matter of St. Luke’s-Roosevelt Hosp. Ctr. at 935-936.) The fundamental liberty interests of an individual to self-determination, privacy, and autonomy are certainly equal to, if not greater than, the private interests implicated in proceedings involving the rights of parents in neglect proceedings or of tenants in housing court. Article 17-A guardianship infringes *1127 on a person’s fundamental right to privacy (see Lawrence v Texas, 539 US 558, 578 [2003]), a fundamental right to refuse unwanted medical treatment (see Cruzan v Director, Mo. Dept. of Health, 497 US 261, 278 [1990]), and a fundamental right to make personal decisions regarding marriage, procreation, contraception, family relationship, child rearing, and education (see Planned Parenthood of Southeastern Pa. v Casey, 505 US 833, 851 [1992]). These fundamental liberty interests protected by the Constitution encompass
“not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children . . . and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free [people].” (Meyer v Nebraska, 262 US 390, 399 [1923].)
Courts have evaluated and balanced three factors in deciding what procedural due process requires when physical liberty is not at stake. These factors are (i) the private interest that will be affected, (ii) “the risk of an erroneous deprivation of such interest through the procedures used,” and (iii) the government’s interests. (Mathews v Eldridge, 424 US 319, 335 [1976].)
First, the respondent’s fundamental liberty interests will be profoundly affected by the imposition of guardianship. Article 17-A guardianship completely strips the respondent’s legal authority to make personal decisions over her own affairs and vests in the guardian “virtually complete power over [such individual].” (Matter of Mark C.H., 28 Misc 3d 765, 776 [Sur Ct, NY County 2010].) Many decisions that define the essence of an individual, such as where she resides, what medical treatment she undergoes or refuses, whom she marries, where she works, and what she purchases, are all removed from that individual. She will have lost the freedom to govern her own affairs, to shape her own life as she thinks best, and to participate fully in society without the permission of another. (Matter of D.D., 50 Misc 3d 666 [Sur Ct, Kings County 2015]; Matter of Michelle M., 52 Misc 3d 1211[A], 2016 NY Slip Op 51114[U] [Sur Ct, Kings County 2016].) In addition, the ability to make decisions about medical and dental treatment are “inherent in the notion of bodily integrity which has been *1128 clearly recognized as protected by both State and Federal Constitutions.” (Matter of St. Luke’s-Roosevelt Hosp. Ctr. at 937, citing Rivers v Katz.) In Rivers v Katz, persons living in an institution for the mentally ill were found to have a fundamental liberty interest in decisions whether to accept or reject medication. Finding that the State could not force these patients to take medication without due process of law and the provision of counsel, the Court of Appeals held:
“In our system of a free government, where notions of individual autonomy and free choice are cherished, it is the individual who must have the final say in respect to decisions regarding his medical treatment in order to insure that the greatest possible protection is accorded his autonomy and freedom from unwanted interference with the furtherance of his own desires.” (Rivers v Katz at 493.)
The fundamental common-law right of an individual of adult years and sound mind to determine what shall be done with her body and to control the course of her medical treatment “is coextensive with the patient’s liberty interest protected by the due process clause of our State Constitution.” (Id.) It has been held that the right to assigned counsel pursuant to SCPA 407 is constitutionally mandated on these grounds alone. (See Proceeding for the Appointment of a Guardian for L.S., NYLJ, July 26, 2016 at 1 [Sur Ct, Chautauqua County 2016].)
Second, consideration must be given to the risk that the procedure used will lead to an erroneous determination without the assignment of counsel for the respondent. Article 17-A proceedings do not uniformly require the respondent’s presence in court, require a hearing for every respondent, adequately provide notice to the respondent in a manner that reasonably ensures that she understands the nature, consequences, and impact of the proceeding, or meaningfully inform the respondent of her right to trial by jury. These guardianships are of unlimited duration and scope, with no provision for independent review or examination. As such, an erroneous determination may have substantial and likely permanent consequences.
Finally, the government’s interest in proceeding with these determinations absent the assistance of counsel for the respondents is generally fiscally motivated, to avoid the expense of appointed counsel and the costs of possible protracted litigation. While the government’s interest in conserving limited fiscal and administrative resources is a factor that must be *1129 weighed, financial cost alone is not a controlling factor in determining whether due process requires a particular procedural safeguard. (See Lassiter v Department of Social Servs. of Durham Cty., 452 US 18, 28 [1981].) Here, the legislature, which has presumably weighed the fiscal burden of providing counsel, has already determined that assigned counsel pursuant to SCPA 407 (1) (b) shall be paid by public funds pursuant to article 18-B of the County Law when this court in its discretion determines that assignment of counsel is necessitated by constitutional concerns (SCPA 407 [2]), and in the interest of justice.
Lastly, the role of assigned counsel is different from the function of a guardian ad litem (GAL), hence appointment of the latter does not satisfy the need for the former. SCPA 1754 (1) states that a court may “appoint a guardian ad litem ... to recommend whether the appointment of a guardian as proposed in the application is in the best interest of the person who is intellectually disabled or person who is developmentally disabled.” The GAL primarily serves in a limited capacity as a neutral evaluator who investigates, reports, and makes recommendations to the court based on her own assessment of the needs of the proposed ward. By contrast, the role of assigned counsel is to represent the respondent as her attorney. Counsel serves as a vigorous advocate on the respondent’s behalf, safeguarding her rights, explaining the consequences of appointment of a guardian, and counseling her about available alternatives to the proceeding.
In the instant proceeding, the verified petition indicates that the respondent’s sole source of income derives from supplemental security income. Applying the criteria established by the New York State Office of Indigent Legal Services to determine income eligibility for the assignment of counsel, this court, bearing the ultimate authority to determine indigence of its litigants, finds that the respondent is indigent and entitled to assigned counsel pursuant to SCPA 407 (1) (b), to be implemented pursuant to article 18-B of the County Law. (SCPA 407 [2]; County Law § 722; Proceeding for the Appointment of a Guardian for L.S.; Matter of Stream v Beisheim, 34 AD2d 329 [2d Dept 1970].)
Upon the record before the court, and under the circumstances presented in this proceeding, and upon a showing finding of indigency, the court, in the exercise of its discretion, determines that the appointment of independent counsel to the *1130 respondent is constitutionally mandated pursuant to the provisions of SCPA 407. Accordingly, it is hereby ordered, that Virginia Geiss, Esq., is appointed and assigned to represent the respondent in this proceeding, pursuant to article 18-B of the County Law.

. SCPA 407 (1) (a) (i).

. SCPA 407 (1) (a) (ii).

. SCPA 407 (1) (a) (iii).

. SCPA 407 (1) (a) (iv).

. New York State legislation passed in 2010 removed the phrase “law guardian” from various statutes and replaced it with “attorney for the child,” *1125 accurately reflecting the lawyer’s role as advocate of the child’s position in court, rather than a neutral agent or investigatory arm of the court. (L 2010, ch 41; see also 2010 NY Senate-Assembly Bill S5461-B, A7805B; Joel Stashenko, Revised Wording Signals New Approach to Representation of Children, NYLJ, Apr. 20, 2010 at 1, col 3.)

. In 2014, three bills were introduced to the New York City Council: Intro No. 214, which provides for the right to counsel for all tenants at or below 125% of the poverty level (this bill was amended in 2016 by Intro No. 214-A to cover all tenants at or below 200% of the poverty level); Intro No. 96, which provides for said right for those 62 years and older; and Intro No. 501, which provides said right for disabled tenants. (See New York City Bar Association, Report on Legislation by the Pro Bono & Legal Services Committee and Housing Court Committee [2015].)

. Remarks of Chief Judge Jonathan Lippman on Law Day 2010, Law in the 21st Century: Enduring Traditions, Emerging Challenges (May 2010).

. 2015 NY Senate Resolution C776; 2015 NY Assembly Resolution B2995.