17-2812-cv
*Disability Rights N.Y. v. New York et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2018

(Argued:     August 16, 2018          Decided:     February 15, 2019)

Docket No. 17-2812-cv

DISABILITY RIGHTS NEW YORK,

*Plaintiff-Appellant,*

*v.*

STATE OF NEW YORK, NEW YORK STATE UNIFIED COURT SYSTEM, JANET
DIFIORE, as Chief Judge of the New York State Unified Court System,
LAWRENCE K. MARKS, as Chief Administrative Judge of the New York State
Unified Court System,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

CABRANES, LYNCH, and CHIN, *Circuit Judges.*

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Hellerstein, *J.)* granting defendants-appellees' motion for judgment on the pleadings and dismissing the complaint. Plaintiff-appellant Disability Rights New York ("DRNY") alleges constitutional and other deficiencies in the manner in which guardianship proceedings are conducted in New York Surrogate's Court under Article 17A of the Surrogate's Court Procedure Act. Relying on *Younger v. Harris*, 401 U.S. 37 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974), the district court determined that it was required to abstain from hearing the case. On appeal, DRNY contends that the district court erred in abstaining.

AFFIRMED.

JENNIFER J. MONTHIE (Lara H. Weissman, *on the brief)*, Disability Rights New York, Albany, New York, *for Plaintiff-Appellant.*

MARK S. GRUBE, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Steven C. Wu, Deputy Solicitor General, *on the brief)*, *for* Letitia James, Attorney General for the State of New York, New York, New York, *for Defendants-Appellants.*

2

CHIN, *Circuit Judge*:

Article 17A of the New York Surrogate's Court Procedure Act (the "SCPA") governs guardianship proceedings in New York State Surrogate's Court for individuals with intellectual and developmental disabilities. The statute was enacted in 1969 to permit the appointment of parents or other interested persons as guardians for individuals unable to care for themselves. Plaintiff-appellant Disability Rights New York ("DRNY") brought this action below contending that the statute is unconstitutional because it does not provide adequate protection for these individuals, and seeking declaratory and injunctive relief to compel defendants-appellees -- the State of New York, its court system, and its Chief Judge and Chief Administrative Judge ("Defendants") -- to alter the manner in which guardianship proceedings are conducted.

The district court did not reach the merits of DRNY's claims as it granted Defendants' motion for judgment on the pleadings, abstaining pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974).

For the reasons set forth below, we affirm the judgment of the district court.[1]

---

[1]  As we affirm on abstention grounds, we do not reach the issue of standing raised by Defendants on appeal because we may "decide a case under *Younger* without

3

*BACKGROUND*

**A.    *Relevant Statutory Provisions***

New York State utilizes two primary procedures related to legal guardianships:  Article 17A of the Surrogate's Court Procedure Act (the "SCPA") and Article 81 of the New York Mental Hygiene Law (the "MHL").

**1.    *Article 17A***

Article 17A governs guardianship proceedings in New York State Surrogate's Court for individuals with intellectual and developmental disabilities.  It was designed primarily to allow parents to serve as long-term guardians of children who cannot care for themselves.  *See In re Chaim A.K.*, 885 N.Y.S.2d 582, 586 (Sur. Ct. New York County 2009).  Guardianships are not limited, however, to parent-child relationships, and guardianship can be obtained by any "interested person," including certain non-profit organizations.  *See* SCPA §§ 1751, 1760.

---

addressing [DRNY's] constitutional standing to bring suit." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (reaffirming the inherent flexibility that federal courts exercise "to choose among threshold grounds" for disposing of a case without reaching the merits).

Article 17A guardianships, which allocate broad decision-making authority to the petitioner over the individual with alleged disabilities, are obtained through judicial proceedings before the New York Surrogate's Court. *See In re Chaim A.K.*, 885 N.Y.S.2d at 585. These procedures are designed to be accessible to lay people. *See id.* "Virtually all" Article 17A proceedings are uncontested and devoid of controversy. *See In re Derek*, 821 N.Y.S.2d 387, 390 (Sur. Ct. Broome County 2006).

An Article 17A proceeding commences with service of notice by the person seeking guardianship to a wide range of interested parties. *See* SCPA § 1753. The court then conducts a hearing at "which [the potential ward] shall have the right to a jury trial." *Id.* § 1754(1). The court can dispense with a hearing with the consent of both parents. *Id.* The individual with an alleged disability shall be present at the hearing, unless the court is satisfied that such person is "medically incapable of being present" or that her presence would not be in her best interest. *Id.* § 1754(3). Though Article 17A does not provide for the right to an attorney, courts have sometimes appointed attorneys in difficult cases. *See, e.g., In re Zhuo*, 42 N.Y.S.3d 530, 532 (Sur. Ct. Kings County 2016). To obtain an Article 17A guardianship, a petitioner must present proof that two

physicians (or a physician and a psychologist) have certified that (1) the individual has an intellectual or developmental disability that makes managing her own life impractical, (2) the situation is "permanent" or "likely to continue indefinitely," and (3) guardianship is in the individual's best interests. *See* SCPA §§ 1750, 1750-a. Courts have recognized that the "best interests" standard is a lower standard of proof than the clear and convincing evidence standard. *In re Mueller*, 887 N.Y.S.2d 768, 769 (Sur. Ct. Dutchess County 2009). Once a petition is granted, the court retains jurisdiction over the guardianship and may modify it at the request of the ward or anyone acting on her behalf. *See* SCPA §§ 1755, 1758.

**2.** *Article 81*

Article 81 governs guardianship proceedings in New York State Supreme Court. Unlike Article 17A, Article 81 is designed primarily to deal with elderly, disabled adults. *In re Lavecchia*, 170 Misc. 3d 211, 213 (Sup. Ct. Rockland County 1996). Article 81 is not limited to individuals diagnosed with specific disabilities, but instead is designed for adults with "functional limitations" that impede their ability to provide for their own personal needs. MHL § 81.02.

Article 81 has different requirements than Article 17A. For example, under Article 81 the court must hold a hearing, at which the prospective ward must be present. *Id.* § 81.11(a), (c). At the hearing, the petitioner has the burden of establishing the need for guardianship by "clear and convincing evidence." *Id.* §§ 81.02(b), 81.12(a). And once a petition has been granted, guardians have ongoing disclosure requirements. *See, e.g., id.* § 81.31 (requiring the guardian to file an annual report with the supervising court). In sum, Article 81 proceedings contain more checks and oversight than Article 17A proceedings: They require more detailed pleadings, proof, and notice, and they provide appointed counsel, a hearing that the potential ward must attend, ongoing supervision and reporting, and narrowly tailored guardianship powers. These more robust standards form the basis for DRNY's argument on the merits.

**B.** *Procedural Background*

On September 21, 2016, DRNY brought this action to, *inter alia*, enjoin defendants from appointing legal guardians pursuant to Article 17A. DRNY alleges that Article 17A proceedings, as currently administered, do not meet the standards of due process and equal protection. Rather than citing the circumstances of specific individuals subject to Article 17A proceedings,

7

however, DRNY's complaint relies primarily on a comparison of the two New York State guardianship schemes -- Article 71A of the SCPA and Article 81 of the MHL.

DRNY brought suit pursuant to (1) 42 U.S.C. § 1983, (2) Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, and (3) Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132. DRNY asked for a declaration that Article 17A violates the Constitution, the ADA, and the Rehabilitation Act. It also sought an injunction requiring defendants to take certain actions in Article 17A guardianship proceedings, such as providing notice, applying a certain burden of proof, and providing substantive and procedural rights equal to those provided in Article 81 proceedings. App'x at 41-42.

Defendants answered the complaint and moved for judgment on the pleadings. On August 16, 2017, the district court granted defendants' motion on abstention grounds pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and *O'Shea v. Littleton*, 414 U.S. 488 (1974). The district court held that DRNY's claims fell "squarely" under the third of the three categories of cases in which *Younger* principles require a federal court to refuse to exercise its jurisdiction in deference

8

to state courts.  *Disability Rights N.Y. v. New York*, No. 16-cv-7363, 2017 WL

6388949, at *2 (S.D.N.Y. Aug. 16, 2017) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571

U.S. 69, 78 (2013)).  The district court also relied on *O'Shea*, holding that the

proposed injunction would impose "standards on state court proceedings that

'would require for their enforcement the continuous supervision by the federal

court over the conduct of' those proceedings."  *Id.* (quoting *O'Shea*, 414 U.S. at 501

(alteration omitted)).  DRNY timely appealed.[2]

### DISCUSSION

DRNY argues that the district court erred in abstaining from

exercising its jurisdiction.  In particular, DRNY argues that the district court

erred in holding that the third *Younger* category applies.  It also argues that the

district court's reliance on *O'Shea* is misplaced.  For the reasons set forth below,

we conclude that the district court correctly abstained under *O'Shea*.

### I.    *Applicable Law*

We review *de novo* the "essentially" legal determination of whether

the requirements for abstention have been met.  *Diamond "D" Constr. Corp. v.*

---

[2]     "[A]n order of abstention is considered final for purposes of appeal, at least when the order applies to the entire complaint." *Pathways, Inc. v. Dunne*, 329 F.3d 108, 113 (2d Cir. 2003).

*McGowan*, 282 F.3d 191, 197-98 (2d Cir. 2002); *accord Schlager v. Phillips*, 166 F.3d 439, 441 (2d Cir. 1999).

In general, "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint*, 571 U.S. at 72. The Supreme Court, however, has recognized "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.*

Federal courts must abstain where a party seeks to enjoin an ongoing, parallel state criminal proceeding, to preserve the "longstanding public policy against federal court interference with state court proceedings" based on principles of federalism and comity. *Younger*, 401 U.S. at 43-44. The *Younger* doctrine has been extended beyond ongoing criminal cases to include particular state civil proceedings akin to criminal prosecutions, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), or that implicate a state's interest in enforcing the orders and judgments of its courts, *see Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). In *Sprint*, the Supreme Court held that *Younger*'s scope is limited to these three "exceptional" categories -- "ongoing state criminal prosecution," "certain civil enforcement proceedings," and "civil proceedings involving certain orders

uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78.

Here, only the third category is at issue:  civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.  Civil contempt orders and orders requiring the posting of bonds on appeal fall into this category.  *See NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977); *Pennzoil Co.*, 481 U.S. at 13).  In *Juidice*, the Supreme Court abstained from interfering with the ability of New York state courts to issue contempt decrees because "[t]he contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory."  430 U.S. at 335, 336 n.12.  In *Pennzoil*, the Supreme Court abstained from interfering with the ability of Texas state courts to require the posting of appeal bonds because of the "importance to the States of enforcing the orders and judgments of their courts."  481 U.S. at 13.  We recently followed this line of cases in finding that abstention was appropriate in a case seeking to enjoin New York courts from ordering

attorneys' fees in child custody cases. *See Falco v. Justices of Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 428 (2d Cir. 2015).

Although *Younger* mandates abstention only when the plaintiff seeks to enjoin ongoing state proceedings and only in the three instances identified in *Sprint*, the Supreme Court has also held that even where no state proceedings are pending, federal courts must abstain where failure to do so would result in "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. In *O'Shea*, the plaintiffs sought to enjoin state court judges from carrying out allegedly unconstitutional policies and practices relating to bond setting, sentencing, and jury fees in criminal cases. *Id.* at 491-92. The Court held that "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials" would amount to "nothing less than an ongoing federal audit of state . . . proceedings which would indirectly accomplish the kind of interference that [*Younger*] and related cases sought to prevent." *Id.* at 500. Thus, to avoid effecting "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings," which is "antipathetic to established principles of comity," *id.* at 501-02, federal courts must be constantly mindful of the "special

12

delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law," *id.* at 500 (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).  Hence, *O'Shea* is an extension of the principles set forth in *Younger*, and although *Younger* does not apply in the absence of pending proceedings, *see Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("Absent any *pending* proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous." (emphasis in original)), the considerations underlying *Younger* are still very much at play even when a suit is filed prior to the onset of state proceedings, *see O'Shea*, 414 U.S. at 500; *see also Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1072 (7th Cir. 2018) ("While this case does not fit neatly into the *Younger* doctrine, it fits better into the Supreme Court's extension of the *Younger* principles in *O'Shea* . . . .").

Like *Younger*, *O'Shea* has also been applied in certain civil contexts involving the operations of state courts.  *See Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006) (abstaining under *O'Shea* from enjoining internal state court judicial assignment procedures).  Many of our sister circuits have abstained in similar situations.  *See Courthouse News Serv.*, 908 F.3d at 1065-66 (abstaining under *O'Shea*, and the principles of federalism and comity that underly it, from

13

enjoining the Clerk of the Circuit Court of Cook County to release newly filed complaints at the moment of receipt); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 612 (8th Cir. 2018) (abstaining under *O'Shea* from enjoining allegedly unconstitutional child custody proceedings because "[t]he relief requested would interfere with the state judicial proceedings by requiring the defendants to comply with numerous procedural requirements" and "failure to comply with the district court's injunction would subject state officials to potential sanctions"); *Miles v. Wesley*, 801 F.3d 1060, 1064, 1066 (9th Cir. 2015) (abstaining under *O'Shea* from enjoining the Los Angeles Supreme Court from reducing the number of courthouses used for unlawful detainer actions); *Hall v. Valeska*, 509 F. App'x 834, 835-36 (11th Cir. 2012) (per curiam) (abstaining under *O'Shea* from enjoining allegedly discriminatory jury selection procedures); *Parker v. Turner*, 626 F.2d 1, 8 & n.18 (6th Cir. 1980) (providing that *O'Shea* establishes a rule of "near-absolute restraint . . . to situations where the relief sought would interfere with the day-to-day conduct of state trials").[3]

---

[3]      While the Supreme Court in *Sprint* made clear that *Younger*'s scope should be limited to the three specified categories, 134 S. Ct. at 591, 594, the Court did not suggest that abstention under *O'Shea* should be circumscribed.  Indeed, courts have continued to apply *O'Shea* even after *Sprint*.  *See, e.g.*, *Courthouse News Serv.*, 908 F.3d at 1072; *Oglala Sioux Tribe*, 904 F.3d at 612; *Miles*, 801 F.3d at 1064-65.

**II.** *Application*

DRNY first argues that the third category of *Younger* does not apply

to this case because there is no pending, parallel state court action. Indeed,

DRNY is not seeking to enjoin any specific pending action, but it is instead

seeking to affect the manner in which all Article 17A proceedings -- present and

future -- are conducted.[4] Mindful of the Supreme Court's admonition that the

three "exceptional" categories under *Younger* are to be narrowly construed,

*Sprint*, 571 U.S. at 73, 78, 82 (noting that the three categories "define *Younger*'s

scope," that *Younger* extends "no further," and that it has not "applied *Younger*

outside these three 'exceptional' categories"), we do not decide whether this case

fits within the third *Younger* category, for we conclude that it falls squarely

within *O'Shea*'s abstention framework.

Our decision in *Kaufman v. Kaye* is instructive. There, we abstained

under *O'Shea* from declaring that New York State's system for assigning cases

---

[4]    We note that DRNY's complaint lacks nearly any specificity in its pleading. The complaint itself merely compares the aspects of two pieces of legislation and fails to mention a single individual by name. Indeed, DRNY "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). As drafted, DRNY's pleading "give[s] no indication of the circumstances that support the conclusory allegation of unlawfulness." *Drimal v. Tai*, 786 F.3d 219, 224 (2d Cir. 2015).

among panels of appellate judges violated the Constitution and we refused to order the state legislature to establish a new procedure for assigning appeals. *Kaufman*, 466 F.3d at 84-85, 87. Doing so, we held, would "raise compliance issues under the putative federal injunction" as well as claims that "the state court's chosen remedy violated the Constitution or the terms of that injunction," which "would inevitably lead to precisely the kind of piecemeal interruptions of state proceedings condemned in *O'Shea*." *Id.* at 87 (internal quotation marks and ellipsis omitted). A recent decision of the Ninth Circuit is also helpful. In *Miles v. Wesley*, the Ninth Circuit abstained under *O'Shea* from enjoining the Los Angeles Supreme Court from, *inter alia*, eliminating any courthouses that heard unlawful detainer actions. 801 F.3d at 1064. The court held that the requested injunction would result in "heavy federal interference in such sensitive state activities as administration of the judicial system." *Id.* at 1063 (quoting *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992)).

In seeking the injunction in this case, DRNY asked the district court (and asks this Court now) to direct the New York State Unified Court System, the Chief Judge of the State of New York, and the Chief Administrative Judge for the Courts of New York to (1) notify all current Article 17A wards of their right to

16

request modification or termination of their guardianship order, (2) hold proceedings that provide augmented substantive and procedural rights "no less than" those of Article 81 proceedings, and (3) cease future Article 17A adjudications "until defendants ensure that the proceedings provide substantive and procedural rights" on par with those of Article 81 proceedings.  App'x at 42.

As in *O'Shea*, DRNY's requested relief would effect a continuing, impermissible "audit" of New York Surrogate's Court proceedings, which would offend the principles of comity and federalism.  Simply put, DRNY seeks to "control[] or prevent[] the occurrence of specific events that might take place in the court of future state [Article 17A proceedings.]"  *O'Shea*, 414 U.S. at 500.  With such an injunction in place, anyone seeking or objecting to Article 17A guardianship in the future would be able to "raise compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution or the terms of that injunction."  *Kaufman*, 466 F.3d at 87; *see also id.* ("[A]ny remedy fashioned by the state would then be subject to future challenges in the district court.").  Ongoing, case-by-case oversight of state courts, like the New York Surrogate's Court, is exactly the sort of interference *O'Shea* seeks to avoid.  *Kaufman*, 466 F.3d at 86 ("[F]ederal courts may not entertain

17

actions . . . that seek to impose 'an ongoing federal audit of state . . . proceedings.'" (quoting *O'Shea*, 414 U.S. at 500)).  Indeed, such "monitoring of the operation of state court functions . . . is antipathetic to established principles of comity."  *O'Shea*, 414 U.S. at 501-02.  Because this Court has "no power to intervene in the internal procedures of the state courts" and cannot "legislate and engraft new procedures upon existing state . . . practices," the district court correctly abstained from exercising jurisdiction in this case.  *See Kaufman*, 466 F.3d at 86 (quoting *Wallace v. Kern*, 520 F.2d 400, 404-05 (2d Cir. 1975)).

DRNY argues that federal courts have often found state statutes unconstitutional, including statutes resulting in the issuance of state court orders. It cites landmark decisions such as *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) (holding that Michigan's law prohibiting same-sex marriage violated equal protection and due process rights), and *Blakely v. Washington*, 542 U.S. 296 (2004) (holding that Washington's sentencing law violates the Sixth Amendment).  But those cases did not implicate *Younger*.  Plaintiffs in *Obergefell* challenged substantive state statutes, and plaintiffs in *Blakely* simply appealed a final judgment of the state courts.  Here, DRNY seeks a far more substantial invasion of state courts' domain; it would have federal courts conduct a preemptive

review of state court procedure in guardianship proceedings, an area in which states have an especially strong interest. *See Falco*, 805 F.3d at 427. Such review would directly impede "the normal course of . . . proceedings in the state courts." *O'Shea*, 414 U.S. at 500; *see also Sprint*, 571 U.S. at 73 (noting that abstention is proper where relief would impede "the state courts' ability to perform their judicial functions." (quoting *NOPSI*, 491 U.S. at 368)).

DRNY also seeks to have Article 17A declared unconstitutional and violative of the Americans with Disability Act and Section 504 of the Rehabilitation Act of 1973. DRNY argues that its request for declaratory relief is not subject to abstention, as a declaratory judgment would not order the state courts to take certain actions. We are not persuaded. In *Samuels v. Mackell*, the Supreme Court held that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." 401 U.S. 66, 72 (1971); *see also Miles*, 801 F.3d at 1063-64 (noting that where *O'Shea* is implicated, even where plaintiffs narrow their request only to declaratory relief, abstention is proper where the relief sought "would inevitably set up the precise basis for *future intervention* condemned in *O'Shea*" because "the question of defendants'

19

compliance with any remedy imposed could be the subject of future court challenges" (internal citations omitted)); *Kaufman*, 466 F.3d at 85 (abstaining under *O'Shea* from hearing Kaufman's complaint seeking injunctive and declaratory relief).  Thus, the district court properly abstained from exercising jurisdiction even as to DRNY's request for declaratory relief.

We conclude by noting that abstention here is supported by the "availability of other avenues of relief." *O'Shea*, 414 U.S. at 504.  DRNY may still avail itself of the state courts to challenge the constitutionality of Article 17A proceedings.  *See Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998) ("State courts are courts of general jurisdiction and are accordingly presumed to have jurisdiction over federally-created causes of action unless Congress indicates otherwise.").  DRNY and any aggrieved individuals will be able to obtain sufficient review in state court and, if needed, the Supreme Court of the United States.  *See Allen v. McCurry*, 449 U.S. 90, 105 (1980) (noting the Supreme Court's confidence in state courts to adjudicate constitutional issues); *Kaufman*, 466 F.3d at 87-88.  Indeed, New York state courts have been diligent in reviewing the sufficiency of Article 17A proceedings, *see, e.g., In re Mark C.H.*, 906 N.Y.S.2d 419, 427 (Sur. Ct. New York County 2010); *In re*

20

*D.D.*, 19 N.Y.S.3d 867, 869-71 (Sur. Ct. Kings County 2015), and understand well the differences between Article 17A proceedings and Article 81 proceedings, *see In re Chaim A.K.*, 885 N.Y.S.2d at 584-90.

## *CONCLUSION*

Accordingly, for the reasons set forth above, the judgment of the district court is **AFFIRMED**.